## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* R. B. HAYS.

1. EASEMENT. *Prescription. Essential elements.* A railroad company, by failing to keep open a ditch which ran alongside of an embankment constituting a part of its road-bed, accumulated the surface water in such quantities as to overflow adjoining lands, the owner of which made constant complaint, but delayed suit until more than seven years after the commencement of this wrong. *Held:* (*a*) Each overflow was a distinct trespass, which, being committed without any claim of right by the company, and without the consent of the owner of the overflowed land, could not establish an easement by prescription or limitation. (*b*) Twenty, and not seven, years is the period of prescription for an easement, such as a right of way or servitude of overflow. (*c*) A benefit accruing is an essential element in an easement, and no period of prescription can create a right to maintain a nuisance, which injures all whom it affects and benefits no one.

2. SAME. *Surface water. Relative rights of adjoining land-owners.* All lands are of necessity burthened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level; the owner of the lower land is liable when he, without grant or prescription, by artificial means, dams up the water and causes it to overflow the higher lands, and the owner of the higher lands, when he collects the water and pours it in a concentrated form or unnatural quantities upon the lower lands. This rule embraces rain and surface water as well as running streams.

Railroad *v.* Hays

3. SUPREME COURT PRACTICE. *Innocuous error.* The Supreme Court will not reverse merely because the circuit judge has erroneously charged upon pleas in support of which no evidence was introduced.

### FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. L. B HORRIGAN, J.

ESTES & ELLETT for Railroad Company.

W. H. CARROLL, FLIPPIN & FLIPPIN and M. D. L. STEWART for Hays.

TURNEY, J., delivered the opinion of the court.

Defendant in error is the owner of a tract of land in Shelby county. Sometime anterior to the war between the States, the lessor of the plaintiff in error built a railroad embracing an embankment over and across the lands of Hays. At the time of the construction of the road a ditch was made on its side, which carried off the surface water. That ditch was kept open, and no damage resulted to the land until after the close of the war, when the ditch being neglected and allowed to fill up, the surface water from the hillside above the embankment overflowed about forty to sixty acres. In some years crops attempted to be raised on the land were entirely destroyed, and in others seriously injured by the surface overflow, or backwater, from the embankment.

This suit was instituted in February, 1878.

The facts of overflow and damage to crops are

not denied, but it is insisted "that an easement to overflow the land had existed under an uninterrupted and adverse exercise of the right for seven years."

The facts are that repeatedly after the nuisance to the land began, complaints were made to the engineer of the road and to road-masters or section-bosses on the part of the road from which the injury resulted. That such complaint was made, together with the application to clear the ditch for the relief of the soil is in no sense denied or controverted by the record. During the time the complaints were being made the owner of the soil was each year, by himself or tenants, attempting to cultivate the land. The company for no purpose set up any claim of right, by either actual possession or sufferance, to the soil or to its use for any purpose. It was never once intimated that the rights of the railroad company for any cause or from any reason interfered with the right of the owner of the soil to its free, unencumbered and unembarrassed use. At no time did the railroad company, by word or act, give the land owner to understand that it had rights by prescription or limitation. On the contrary, it did, by its silence, confess the right of the owner to have his soil relieved of the overflow by the opening of the ditch, as was the custom of the company before the war.

By what rule of reasoning can it be held that a trespasser, who is repeatedly confessing that he is such, and never in any manner claiming a right, is protected by the statute of limitations, or by any rule of prescription?

The case of *Heiskel* v. *Cobb*, 11 Heis., 638, is no authority for the railroad company. In that case Heiskel had the consent of the ancestor, Cobb, to build the dam. He also had the assistance of Cobb, who had given permission to use his bank in making his dam and encouraged him to do so. In that case there was an actual claim of right under the consent, or encouragement and recognition of the claimant of the soil, which worked an estoppel. In the present case the defendant company has not only always recognized the right of Hays to the soil, its use and products, but has never by word, act or deed claimed any interest therein for any purpose. On the contrary, the rights of Hays to the fullest extent have been recognized by silence and by acts intermixed in no way with any claim on the part of the company. So that it must result, even should we hold that seven years adverse possession was sufficient to create a prescription to overflow the lands of Hays and perpetuate a nuisance upon his land, still the facts of this case present no such question, and the charge of his Honor that twenty years adverse exercise of the right to overflow, etc., must be shown before a prescriptive right would exist, is not warranted or called for by the facts, and being immaterial to the issue will be disregarded by this court.

But suppose a prescription may give the right to perpetuate a nuisance, both to the corporation and the land-owner, and that it is immaterial that its existence does not confer a benefit, as this one does

25—VOL. 11.

---

---

not, still no right by prescription or limitation has been created. In *Ferrell* v. *Ferrell*, 1 Baxt., 334, this court, speaking by Judge Freeman, says:

" The rule of a presumption of a grant from the State has been settled in Tennessee by several cases to be twenty years, and we think this rule may be as well applied to a right (of way) of the character now under consideration as to grants from the State. It is based on reasons of public policy and to quiet titles, and is a presumption of law in favor of a long continued possession" (citing several authorities).

" We think, therefore, these cases, recognizing the period of presumption of a grant, furnish a sounder analogy on which to fix the rule of presumption of a deed where it is to be made out solely by use or enjoyment of the right than the period of seven years in our statute of limitations as to real property.

" Perhaps we might hold with perfect propriety that these cases furnish evidence of the adoption of this period as the rule for presumption of a convey-ance, required to be made by deed in all cases, when such conveyance is to be made out by enjoy-ment or use, without any written evidence of the inception of the claim.

"A sound policy favors this view, as the fact of a deed could readily be shown within the period of seven years, if the party had one, while it might well be lost, or evidence of its existence be unat-tainable in the longer period of twenty years, and therefore the right be wrongfully imperiled."

This holding was made in view of our statute of

Railroad *v.* Hays.

limitations, and the principles of construction now insisted upon by the plaintiff in error were present in the minds of the court, and considered of and and passed upon by the court. For the strong reasons given they were rejected as being against public policy and unsound in practice. The case turned upon the construction of the statute. No sufficient reason is urged why that opinion should be overruled.

There is no one fact in the record to show that "an easement to overflow the land existed under an uninterrupted and adverse exercise of the right for seven years," or for any other length of time. If it shall ever become a rule of this court to reverse because the court below has erroneously charged the law upon pleas raising questions of law, and in support of which no facts are introduced, it will in many cases give to defendants justly liable an indefinite delay in having their responsibility fixed by judgment, as immaterial and impertinent pleas will be constantly interposed. It is perfectly apparent from the record that no thought of claim to overflow the land ever occurred to Hays or to the managers of the railroad until after this suit was commenced. Every fact and circumstance (important and unimportant) proves conclusively that no claim of any sort was ever asserted by the company or its agents against the claim of Hays to the absolute and unrestricted use of the land.

The construction of the ditch was with a view to drain the land, and that purpose was pursued until

after the close of the war.    Up to that period the railroad company recognized and obeyed its obligation to protect the lands from overflow, and has never since denied the existence of that obligation.

The record shows that no benefit—an indispensable essential in the claim to an easement—ever did or could result to the said road from the overflow of the lands.    Since the commencement of this suit, the company (as it takes care to prove) opened the ditch, the witness saying: "I am frequently called on to open these old ditches of this sort; opened a ditch last spring south of the railroad company's right of way through this land for the protection of the railroad, by order of the superintendent.    The road-bed is low and damp."    We are aware of no rule of law that gives a right by prescription or long use to a nuisance that gives benefit to no body or corporation, but works hurt and inconvenience to all, even as in this case, to the creator of the nuisance. The water was injurious to the road-bed, and on that account the ditch was opened.    Prescription is defined to be, the manner of acquiring property by a long, honest and uninterrupted possession or use during the time required by law.    The possession must have been long-continued, peaceable and without interruption:    Bouvier's Law Dictionary.    There has been, as we have seen, no such possession and use, in the case before us, for any length of time, either long or short, and we are satisfied the purpose to make the claim originated after suit was brought.

The next question is, is the company liable for

damages resulting from an overflow by surface water?

In *Colcough* v. *Nashville & Northwestern Railroad Company*, 2 Head, 173, this court said: "The statutory remedy does not, however, contemplate or extend to damages or injuries to adjoining land not authorized by the charter, nor to damages resulting from carelessness, negligence or willful trespasses in the execution of the work." This language of Judge McKinney was approved in *Carriger* v. *Railroad Company*, 7 Lea, 389.

The damages in the case at bar is to land not contemplated in the statutory remedy, and result from carelessness, negligence or willful trespass in keeping up the road-bed. "Land cannot be cultivated or enjoyed unless the springs which rise on the surface and *the rains that fall* thereon be allowed to make their escape through the adjoining and neighboring lands. *All lands, therefore, are of necessity burdened with the servitude of receiving* and discharging *all waters* which flow down to them from land on a higher level, and if the owner or occupier of the lower lands interposes *artificial impediments* in the way of the natural flow of the water through or across his lands, and by so doing causes the higher lands to be flooded, he is responsible in damages for infringing the *natural* rights of the possessor of such higher land to the natural outfall and drainage of the soil, unless he has gained a right to pen back water by contract, grant or prescription. So if the proprietor of the higher lands alters the natural condition of his property, and *collects the surface and rain water together*

*at the bottom of his estate* and pours it in a concentrated form and in unnatural quantities upon the land below, he will be responsible for all damages thereof caused to the possessor of the lower lands": Addison on Torts, p. 95. This principle was cited and approved in Carriger's case, 7 Lea, and applies to this case. It embraces rain and surface water, as well as running streams.

There can be in principle no distinction between the two kinds of water. The only questions arising are, has the conduct of the one party worked an injury to the property of the other? Has the railroad company, in the construction of its road-bed, or by its failure to keep it in proper condition, prevented the land-owner from using and enjoying his estate? Has it so altered the natural condition of its right of way as to collect surface and rain-water together and throw it back in unnatural quantities upon the land of Hays, and cause damage thereto? The facts conclusively show that all these things have been done and that damage has resulted. The railroad company has made itself a trespasser by its subsequent neglect to keep its property in repair, and is as much responsible for injuries resulting from that neglect as it would be for a failure, carelessness or negligence in the original construction of its road by which loss or damage was visited upon an adjacent land-owner.

The petition to rehear is dismissed, and the judgment of affirmance entered at the last term is reinstated.