HARRY YATES and wife, AILEEN YATES, Plaintiffs-in-Error, v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Defendants-in-Error. —451 S.W.2d 437.

Middle Section. August 29, 1969.

Certiorari Denied by Supreme Court March 2, 1970.

720

Smith, Ortale & Smith, Nashville, for plaintiffs in error.

Thomas I. Carlton, Jr., and P. V. Jackson, III, Nashville, for defendants in error.

TODD, J. The plaintiffs, Harry Yates and Aileen Yates, have appealed in error from a directed verdict dismissing their suit against the defendant, Metropolitan Government of Nashville and Davidson County, Tennessee, for water damage to plaintiffs' property which allegedly resulted from improper construction or maintenance of facilities on adjacent property.

The basic facts of the case are uncontroverted. Plaintiffs' property faces east. The natural flow of surface water in the area is from southwest to northeast, so that drainage from the land west of (behind) plaintiffs' property crosses plaintiffs' rear line and proceeds across

plaintiffs' property in a diagonal direction toward the street at the front (east).

In 1962, the firm of Estes-Taylor subdivided the land behind (west of) plaintiffs' property. Said firm built streets, laid water lines, and built a pumping station near plaintiffs' southwest corner. A 20-foot utility easement extending from the pumping station to a nearby street was included in the recorded subdivision plat and reserved in the sale of lots on which it appeared. Said Estes-Taylor provided a driveway in said easement from said street to the pump house by grading and spreading crushed stone. A ditch or ditches associated with said driveway intercepted the said diagonal flow of surface water, diverted it in an easterly direction, and channeled it in an unnatural flow upon plaintiffs' property. The pump house and drive were completed about September 1962.

On December 17, 1962, the pumping station and pipes in the subdivision were conveyed to Nashville Suburban Utility District by a bill of sale which conveyed no easement or other interest in realty. Thereafter, the Utility District utilized the driveway for access to the pumping station, without altering it. On February 1, 1964, the Department of Water and Sewerage Services of the Metropolitan Government of Nashville and Davidson County acquired the entire operations of the Nashville Suburban Utility District. Since that time, the Metropolitan Water employees have used said road for access to said pump house, but have not altered it. There is evidence in the record that the Metropolitan Government agreed to assume all the liabilities and obligations of the Utility District.

Plaintiffs noticed the first excess water on their property in the latter part of 1962. In May or June, 1963, a large amount of crushed stone from the pump house road was washed into plaintiffs' back yard and considerable water appeared in plaintiffs' basement. Again in March 1964, after a heavy rain, there was a heavy accumulation of water in plaintiffs' back yard and basement.

In the spring of 1966, after observing cracks in their walls and distortion of door openings, plaintiffs called in a remodeling contractor. His investigation revealed that water had found its way under the foundation of the house, where it had carried away part of the earth supporting the foundation, thus causing the house to "settle." The condition was corrected at considerable expense. Included in the corrective measures were adequate drainage ditches along the back line and each side line of plaintiffs' lot and filling in the center of the lot so as to cause surface drainage to flow around the house rather than against it.

At the conclusion of all the evidence, the trial judge directed a verdict in favor of the only defendant, Metropolitan Government, and judgment was entered accordingly.

The assignments of error are as follows:

"1. The Court erred in finding as a matter of law that the defendant was not responsible to the plaintiffs for damages incurred by them due to the directing of the natural flow of waters in such a manner as to concentrate the waters in one place so that the concentrated flow would do damage to the lower landowner. (B.E., p. 297).

"2. The Court erred in granting the motion for a directed verdict made by the defendant at the close of all the proof. (B.E., p. 297).

"3. The Court erred in directing a verdict for the defendant and against the plaintiffs as a matter of law (B.E., p. 297).

"4. The Court erred in finding that there is no evidence from which the jury could find that either the Metropolitan Government or the Nashville Suburban Utility District did in fact construct the road or the ditch but that it was constructed by the Estes-Taylor Company (B.E., p. 299, 243).

"5. The Court erred in ruling that in order for the defendant to be liable '* * * there would have to be a showing that the Metropolitan Government or, at least, the Nashville Suburban Utility District actually constructed this ditch in such a way * * * the ditch and road * * * in such a way as to direct the water unnaturally in a concentrated form upon the plaintiffs' property' (B.E., p. 298).

"6. The Court erred in finding that the plaintiffs had voluntarily reduced the amount of their damages down to a specific amount where the plaintiffs had sued for $35,000.00 which amount was a question for the jury (B.E., p. 297).

"7. The Court erred in finding that there was no relationship contractual or otherwise between the defendant Metropolitan Government or the Nashville Suburban Utility District and the Estes-Taylor Company where the preponderance of the evidence raised

the question of fact for the jury to determine. (B.E., p. 250, 251, 254, 243, 244)."

Pretermitting assignment no. 6, which is irrelevant to the disposition of this appeal, each of the other assignments simply complains of the direction of a verdict for the defendant on various grounds and theories. As stated in plaintiffs' brief,

"The issue in this cause before this Honorable Court is stated as follows:

"Is a municipal corporation liable for damages where it is operating a water system in an easement dedicated to the public for that purpose where the surface of the easement constitutes a nuisance and damages a neighboring property owner when it appears that the original condition of the easement exists because of the prior acts of third persons who may or may not be contractually related to the municipal corporation."

The first three assignments of error are directed at the general conclusion of the trial judge that the plaintiffs had failed to prove a prima facie case of liability against the defendant. In support of these assignments, plaintiffs insist that the dedication of the 20-foot utilities easement constituted "the municipality" as a "trustee for the public" with duties to control and maintain the easement properly.

It is also insisted by plaintiffs that the diversionary ditch or ditches constituted a nuisance located "on the easement," and that defendant and its predecessor were obligated to "remove the nuisance from the easement."

■■ This latter insistence is based upon an erroneous conception of an easement. Although easements are sometimes described by distances and bounds, they are not tangible real estate. An easement does not consist of a quantity of land, but merely the privilege to pass over certain land. Thus the use of an easement does not entail general supervision or maintenance of the land over which it passes, but only to such extent as is necessary for the exercise of the privileges of the easement.

■ The holder of an easement has the right to use or alter the affected premises only as reasonably necessary for the use of the easement. Such holder has no right to exclude others from the use of or alteration of the premises so long as there is no interference with the easement privilege. For this reason, the holder of an easement could not be reasonably required to perform any maintenance, repairs or alterations upon the property over which the easement exists, unless such holder has made such maintenance, repairs or alterations necessary by the manner of *his* use of the easement. Specifically, the Utility District and its successor, Metropolitan Government, had the right to come and go along the driveway, but they had no right or obligation to make any repairs or changes in the real estate unless their use of the easement made such repairs or changes necessary. It is not shown that the ditch or ditches complained of were necessary for, or incident to, or created by the traversal of the easement area by defendant or its predecessor, the Utility District.

As stated, the easement was 20 feet wide. An ordinary driveway would not occupy more than one half of this width. The exact location of the ditch or ditches is not

shown, in fact it is not specifically shown that the ditch or ditches was or were within the 20 foot easement. Assuming, however, that the ditch or ditches was or were within the easement, then it is the insistence of plaintiffs that by using a drive of ten feet width, the defendant assumed the obligation to remove and prevent nuisances throughout the entire 20 foot width of the easement. This proposes an unsound and unjust rule.

Such a rule would require that an electric power utility constantly patrol, police and maintain the entire width of its easement, even though its use of the easement were confined to the presence of electric conductors in the air space and the owner of the title to the land had the general use of the land subject only to the easement.

A sounder rule, and that employed in the many authorities which have been studied, is that the holder of the easement is responsible for proper maintenance of *what he puts on the easement* to facilitate his use of the easement.

This utilities easement was for the benefit of all utilities, such as electric power, gas, telephone, sewage and water. If any utility which utilized the easement thereby assumed the burden of removing pre-existing ditches which of several utilities would be so burdened?

Plaintiff insists that defendant was obligated to maintain the easement because it was "held by the municipality" in trust for the public. The "municipality," which plaintiff insists is the "holder" of the easement is of rather nebulous identity. The Utility District was one of several public utilities eligible to use the easement. The easement is shown to be within the corporate limits of a municipality, the City of Forest Hills, which is not a

party to this action. The defendant Metropolitan Government of Nashville is a municipality, but its position in the present case is due to its proprietary operation of the waterworks, and not due to any general municipal jurisdiction of the area involved.

■ It is shown that the property over which the easement and driveway runs is owned by the owners of lots 25 and 26, respectively, having been conveyed to them by Estes-Taylor subject to the easement. It would be the responsibility of the owners to abate any nuisance on their premises. If created by the user of an easement over the premises, the owner would have a right to have corrections made by the one who created the nuisance.

Plaintiffs cite many authorities for the proposition that certain easements are held by certain public corporations for the public use, and that such public corporations are responsible for the "maintenance of the easement." None of such authorities are in point for the reason that none holds that a public utility which uses a utility easement over land thereby undertakes to remove from such land any nuisance placed thereon by other and previous users.

■ Plaintiffs insist, and cite many authorities for the proposition that owner of an easement must "keep it in proper condition" or "keep it in repair," but these authorities deal with situations wherein the holder of the easement has an exclusive right to control of the property, or where improvements or alterations are made by the holder of the easement as an incident to the easement. It is the facilities of the easement, rather than the ground itself which must be "kept in repair" by the holder of the easement.

In the present case, it is not shown that the ditches were facilities of the easement, that is, that they were a necessary incident to the usefulness of the easement, nor that the defendant herein had neglected to repair or maintain them. On the contrary, plaintiffs insist that it was the duty of defendant to remove them.

Plaintiffs insistence in this regard is stated in their brief as follows:

"* * * the access road built on the dedicated easement was done so through apparent necessity to obtain the use for which the easement was dedicated, that is, so that heavy equipment could reach the pump house located at the bottom of the steep hill and easement. It is the position of the plaintiff-in-error that once such a road was built, it was the duty of the owner to maintain the road in such a manner that it did not become a nuisance and consequently damage plaintiff-in-errors' land * * *"

Such insistence pre-supposes, without support in the evidence, that the ditches were a necessary part of the road as used by defendant, that there was some failure of defendant to "maintain" the road or ditches so that it, or they, "became a nuisance." To the contrary, all of the evidence indicates that the "nuisance" or diversion of water was created by Estes-Taylor before defendant Metro. or its predecessor, the Utility District, made any use of the easement. There is no evidence that the District or Metro., by any negligence allowed the road or ditches to *become* a nuisance.

Plaintiffs cite many authorities, none of which are applicable to the facts of this case. Hames v. City of Polson, 123 Mont. 469, 215 P.2d 950 (1949) was an in-

junction suit to prevent a city from operating a beer tavern in a city park. City of Memphis v. Overton, 54 Tenn.App. 419, 392 S.W.2d 86 (1963) was an effort by a city to claim fee simple title to lands which were held for limited purposes only. Carroll County Board of Education v. Caldwell, 178 Tenn. 671, 162 S.W.2d 391 (1942) held that buildings or other facilities placed upon property dedicated to a particular use belong to the public agency, but that the basic fee in the property belongs to the dedicator upon condemnation for other public use. City of Athens v. Burkett, 59 S.W. 404 (Tenn.Ch.App. 1900) held that where a municipality failed to accept the dedication of a ''Fountain Square,'' the successor municipality could not later accept and claim the area.

In Wells v. North East Coal Co., 274 Ky. 268, 118 S.W. 2d 555 (1938) a coal company had constructed a trestle over its easement across a farm and a piece of the trestle fell on the farmer's son who was working nearby. The liability of the coal company for negligent maintenance of the trestle was held to be for the jury.

Caldwell v. Knox Concrete Products, Inc., 54 Tenn. App. 393, 391 S.W.2d 5 (1964), cited by plaintiffs, involved the continued noise of a manufacturing plant, rather than a static condition created before the arrival of the defendant upon the scene. Louisville & N. R. R. v. Hays, 79 Tenn. 382 (1883), cited by plaintiffs, involved negligent maintenance of a right of way by failure to keep open a ditch which had been dug by the railroad company as a necessary incident to construction of its railroad tracks.

These and other authorities cited by plaintiffs deal with the respective duties of the owner of an easement

and the owners of the underlying fee as to maintenance of the *facilities* for utilizing the easement, and their liability to each other and to others for their failure to perform their duties.

No authority has been cited or found which holds the user of an easement liable for failure to remove from the territorial bounds of the easement a nuisance which was placed or created thereon before such user began to use such easement.

■ The trial judge was therefore correct in his holding that the defendant herein could not be held liable for failure to fill up or remove ditches within the 20-foot strip over which the easement extended unless it be shown (as it was not) that the defendant or its predecessor, the Utility, actually created or permitted the creation of the ditches during and as an incident to its use of the easement.

Assignment No. 4, supra, cannot be sustained because there is no evidence whatsoever in the record that the defendant, Metropolitan Government or its predecessor, the Utility District, performed any construction work or in any manner created the situation complained of by plaintiffs. Plaintiffs' brief cites no such evidence, and a careful scrutiny of the record fails to disclose the same.

Assignment No. 5 is supported only by the authorities above referred to regarding the duty to "maintain" or "keep in repair" the easement. As already stated, no authority in decisions, reason, or logic has been produced or found to require the removal of a pre-existing nuisance from a premises as a condition to the use of an easement across the premises.

In support of Assignment No. 7, plaintiffs insist that there is evidence to support an inference that a contractual relationship existed between Estes-Taylor, who constructed the drive, and the Utility District and its successor, The Metropolitan Water Department; and that such a relationship would render The Metropolitan Government liable for the acts of Estes-Taylor in creating the ditch or ditches complained of.

On this subject, Mr. Estes, testified without contradiction that the water system was constructed in contemplation of its acceptance and operation by the Utility District; that it was necessary to comply with certain requirements of the Utility District as to pipes and fittings in order to assure acceptance of the system; and that

"they (the district) wanted some gravel on the * * * in this easement to get to the * * * if they wanted to get to the pumping station."

Plaintiffs cite Hendrix v. City of Maryville, 58 Tenn. App. 457, 431 S.W.2d 292 (1968) wherein two cities were sued because of the smoke, noxious odors and other fumes emanating from a garbage dump being used simultaneously by both cities. This Court held that it was for the jury to determine whether the duty of controlling noxious fumes from a dump was delegable or not, that is, whether the City of Alcoa should be discharged on the ground that the City of Maryville handled the dumping of garbage for the City of Alcoa as an independent contractor. This Court said

"* * * it appears that reasonable minds could reach a different conclusion as to the status of the City of Alcoa. * * * there is evidence here which tends to show

the operation of this disposal site was a joint venture.''
431 S.W.2d at 297.

No such joint or concurrent action is shown by the record in the present case. On the contrary, the present record discloses only successive actions, first by Estes-Taylor in building the drive and later by the Utility District in using it. Testimony that the Utility District required some gravel to be spread on the easement as a condition to acceptance of the system is not sufficient to sustain an inference that ditches were cut and surface water was diverted at the direction of the Utility. Furthermore plaintiffs' declaration makes no suggestion of such a theory of liability.

 Defendant cites a number of excellent Tennessee authorities in support of its position, however the facts of the present case present a novel and distinctive situation which is not amenable to the abstract generalization of said authorities. Since the defendant appears in this case in its proprietary rather than its governmental capacity, its liability must be judged by standards which would be equally applicable to any lawful user of the easement involved. By the application of such standards to the facts in this record, there is no basis upon which a jury verdict against this defendant would have been justified.

There is some evidence in the record that a wall was constructed by the Utility in an effort to alleviate the effect of the diversion of water by the ditch or ditches, but there is no evidence that the construction of the wall was a contributing cause of plaintiffs' damages.

There is some insistence that the paving of streets, or the mere spreading of gravel on the drive caused plain-

tiffs' damage, but this insistence is not supported by the evidence.

The overall justice of this case supports the disposition made by the trial judge. From the evidence, it is clear that Estes-Taylor created a situation in violation of plaintiffs' rights which would have sustained an action against Estes-Taylor for injunction and/or damages. It is equally clear from the evidence that plaintiffs knew of the situation shortly after the construction by Estes-Taylor and before the transfer of the water system to the Utility District. It is likewise clear that, by constructing proper diversion ditches on their own property (as was ultimately done) plaintiffs could and should have avoided the major and expensive damage to their home.

The proper remedy for the unlawful diversion of water upon plaintiffs' property would have been, and still is, a suit against the owners of the property involved to require the abatement of the diversion. Another course open to plaintiffs was to regrade or ditch their own property (as was finally done) to prevent water from entering and damaging their home. Generally, it is the duty of an injured party to exercise reasonable care and diligence to avoid loss or minimize damage. Gilson v. Gillia, 45 Tenn.App. 193, 321 S.W.2d 855 (1958).

The record shows that plaintiffs did not take the preceding reasonable steps to protect their rights. On the contrary, plaintiffs chose to take no remedial action and by continued neglect to do so allowed extensive damage to accumulate on their premises. It would not now be just to permit full recovery for such damages so enlarged by long neglect. There is no evidence in this record whereby the jury might reasonably and correctly assess

the amount justly due plaintiffs, even if defendant were liable.

This disposition of plaintiffs' suit for damages does not preclude a proper action against the proper parties in the proper court at the proper time for the removal and elimination of the condition which prejudices the value and usefulness of plaintiffs' property.

The judgment of the trial court is affirmed with costs.

Affirmed.

Shriver, P. J. (M.S.), and Puryear, J., concur.