842 F.2d 330
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth Ann BAIRD, Plaintiff-Appellant,
v.
ANR PIPELINE COMPANY, Defendant-Appellee.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1988.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Elizabeth Ann Baird appeals the district court's order entering judgment in favor of the ANR Pipeline Company in this diversity action.
 
 
 2
 Baird is the daughter of Tom and Mary Nell Bullifin, the original plaintiffs in this action.[1] The Bullifins had owned timber rights on some rural property in Tennessee, property owned by Tom Yarbro. The ANR Pipeline Company owned a subsurface easement under a portion of the same property allowing it to operate and maintain a natural gas pipeline. The pipeline was completely underground, with no surface facilities. A drainage canal, dredged in the early 1900's, also crossed the land in question.
 
 
 3
 In July 1979, a portion of the canal bank ruptured, and water flowed through the break, depositing sand, mud, and silt upon the timberland. The rupture occurred at the point where the pipeline crosses underneath the canal. The flooding reoccurred with each rain, rending logging operations impossible.
 
 
 4
 A few days after the initial break occurred, Paul David Norris, an agent for Yarbro, notified the pipeline company of the problem. Company representatives examined the area on that occasion, and on several subsequent occasions, apparently to determine whether the pipeline was in danger. One company representative, Dan Wooten, discussed with Norris the possibility that the company would repair the bank, but Wooten was subsequently told by other company officials that they believed the pipeline was safe and that he, Wooten, was not to do any work on the break. Apparently, the company's only concern was the safety of the pipeline, and its practice was to effect repairs only where the integrity of the pipeline was threatened.
 
 
 5
 During the summer of 1980, Norris repaired the bank on behalf of the landowner. Company representatives were present when the repairs were made, but only to insure that the pipeline was not damaged.
 
 
 6
 The Bullifins brought this action in federal district court. Their complaint alleged that the pipeline company's failure to maintain the canal bank, and its refusal to repair the bank after it ruptured, destroyed some of their timeber and prevented them from harvesting the wood. The Bullifins sought an injunction requiring the company to repair and maintain the canal bank, and they sought damages in the amount of $100,000.
 
 
 7
 The district court made two important factual findings. First, the court found "absolutely no proof" that anything relating to the restoration of the canal bank after the original construction of the pipeline caused the 1979 break. Second, the court also found no proof that the pipeline company failed to maintain the pipeline or the surface above it, or that any failure to maintain the line or surface ground caused the break. Therefore, the sole issue presented by this appeal is whether the pipeline company had a legal duty to repair the canal bank.
 
 
 8
 Baird does not challenge the court's factual findings. Rather, she argues that the pipeline company had a duty to repair the break under both tort and contract theories. We reject these arguments.
 
 
 9
 Under Tennessee law, the holder of an easement is not required to perform maintenance or repairs upon the property on which the easement exists, unless the holder's use of the easement makes such maintenance or repairs necessary. Yates v. Metropolitan Gov't of Nashville and Davison County, 451 S.W.2d 437, 441 (Tenn.App.), cert. denied (1969). The district court concluded that the pipeline company did not make repair of the canal bank necessary by its use of the easement. Baird claims, however, that the phrase "use of the easement" was construed too narrowly; she maintains that the company's zealous assertion of exclusive control over all aspects of the pipeline easement gave rise to a corresponding duty to maintain the property which surrounded the pipeline.
 
 
 10
 We disagree. Baird has offered no proof of how the company's use of the easement made the surface repairs necessary. All that Baird's proof shows is that a break in the canal just happened to occur directly above the buried pipeline. Such a concidence cannot justify an expansion of the company's legal duties.
 
 
 11
 Baird's two contract arguments are also without merit. First, she contends that the company's contractual obligation to make the necessary repairs arose by way of the easement agreement. That agreement provided, in pertinent part, that the pipeline company "agrees to pay the owner of said land, and to any tenant or lessee thereof, ... any damages to ... timber which may be caused by constructing, maintaining, altering, repairing, replacing, moving, or removing the pipelines...." As stated above, however, the district court specifically found no proof that the company's construction or maintenance of the pipeline caused the break. Because Baird has offered no evidence that these findings are clearly erroneous, we are compelled to conclude that the easement agreement did not obligate the pipeline company to repair this break or compensate Baird for damage resulting from that event.
 
 
 12
 Baird's oral contract argument is similarly unavailing. She claims that Wooten, a company representative, expressly promised Norris that the company would restore the bank. There are two main problems with this theory. First, the district court found that the evidence did not permit the inference that Wooten actually made an express promise to Norris to repair the break. Second, even if Wooten's remarks were more than merely a statement that the pipeline company might choose to repair the canal bank, Norris had no legal relationship to the Bullifins and was not acting on their behalf. Therefore, because Wooten's statements were not sufficient to bind the pipeline company, and because the alleged promise was not made to the Bullifins or their legal representative, we conclude that the company did not orally contract with the Bullifins to repair the bank.
 
 
 13
 In sum, we agree with the ditrict court that the pipeline company did not have the legal duty to repair the canal bank.
 
 
 14
 Accordingly, the judgment in favor of the ANR Pipeline Company is hereby affirmed.
 
 
 
 [1]
 Because both of the Bullifins have died since the trial, Baird, as executrix and successor to the Bullifins' rights, has been substituted as the party-plaintiff