IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2021 Session

**CHARLES E. WALKER v. STATE OF TENNESSEE**

**Appeal from the Tennessee Claims Commission**
**No. T20181656      James A. Haltom, Commissioner**

_____

**No. M2020-01626-COA-R3-CV**

_____

A homeowner brought an action for nuisance and unlawful taking against the State of Tennessee for its alleged failure to maintain a drainage facility on an easement the State acquired from a prior owner of the property. On grant of summary judgment, the Tennessee Claims Commission found no evidence to suggest the State constructed the faulty drainage structures the homeowner alleged caused the flooding and, therefore, the State was not required to maintain or repair the faulty structures. Discerning no error, we affirm the Claims Commission's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

Charles E. Walker, Nashville, Tennessee, pro se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Peako Andrea Jenkins, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 7, 2013, Charles E. Walker ("Claimant") purchased property located on Bell Road in Antioch, Tennessee from Gerald and Emma Lister. Claimant did not conduct a home inspection before purchasing the property. The property contains a permanent easement that was conveyed by the Listers to the State of Tennessee ("the State") in 1997. The easement was acquired by the State during its expansion of Bell Road, a state highway. _See Walker v. Metro. Gov't of Nashville & Davidson Cnty._, No. M2016-00030-COA-R3-CV, 2018 WL 842415, at *3 (Tenn. Ct. App. Feb. 13, 2018). The

warranty deed describing the permanent easement the Listers conveyed to the State states, in pertinent part:

> By this instrument the grantors hereby convey a permanent easement for construction and maintenance of a drainage facility. The land described below, on which the drainage facility is to be constructed[,] is to remain the property of the undersigned and may be used for any purpose desired, provided such does not interfere with the use or maintenance of said facility.

In July 2014, Claimant brought an action against the Metropolitan Government of Nashville and Davidson County ("Metro") for damage to his property caused by storm water runoff. *Walker*, 2018 WL 842415, at *1. In that case, Claimant alleged that "a broken/defective storm pipe" caused storm water runoff from Bell Road to flood his home. *Id.* In the course of discovery, Claimant admitted that he did not have any evidence that Metro installed or owned the drainage pipe at issue, and he did not know who installed the underground drainage pipe. *Id.* at *3. The trial court granted summary judgment to Metro based on the doctrine of sovereign immunity, and this Court affirmed the trial court's decision. *Id.* at *4.

Approximately two weeks after this Court entered its opinion affirming the trial court's grant of summary judgment against Metro, Claimant submitted a claim with the State of Tennessee Division of Claims and Risk Management alleging that a "drainage culvert is exposed on [the] right of way and spraying water against the house flooding [the] basement and central/air and heat unit." The claim was transferred to the Claims Commission on June 6, 2018. On July 5, 2018, Claimant filed a formal Complaint against the State of Tennessee ("the State") alleging that the State's "drainage facility . . . caused water to spray against Claimant's house and property causing damages" including water intrusion into the basement, damage to the central air unit, eroding "support dirt" from around the house, and cracking the concrete steps and driveway. Claimant asserted causes of action for ongoing nuisance and unlawful taking. Attached to his Complaint was a photo of a partially buried concrete rectangular structure with red lettering on the front, which he alleged was the "drainage facility" that causes flooding issues on his property. The State answered the Complaint generally denying responsibility for Claimant's alleged damages.

Gregory Woerdeman, a district operations supervisor with the Tennessee Department of Transportation ("TDOT"), inspected Claimant's property and the drainage structures at issue in April 2018. Mr. Woerdeman responded to Claimant's discovery requests on behalf of the State and provided the following response with respect to his inspection of the drainage facility:

> The drainage structure[] appeared to have been modified and a combination of reinforced concrete pipe and corrugated metal pipe had been added to the structure extending through the property at . . . Bell Road. The modifications

and pipe were not installed by TDOT and did not comply with TDOT standard specification.

In his deposition, Mr. Woerdeman was asked to explain what the term "drainage facility" means; he stated:

> A.   It is a broad term.  So, say, a drainage feature, a drainage facility could be a ditch, anything you use to really convey water.  That's probably the easiest and most - - broadest explanation I could give you.  It could be the structure that's here, the ditch line, the catch basin that it goes into.  It's kind of all encompassing.

Mr. Woerdeman testified regarding the concrete rectangular box (a picture of which was attached as an exhibit to Claimant's claim) as follows:

> Q.  Do you recognize this hole?
> A.  Yeah, that's the – that's the hole that you can see up there.
> Q.  Then what is this?
> A.  I'm not sure.  It's a little funky.  It looks like a concrete lid of some sort. I didn't recognize it as per anything TDOT has.
> Q.  Do these red markings mean anything to you?
> A.  No.  I hope they would be identifying, but they're not.
> Q.  Do you know what purpose this – this serves?
> A.  No, I don't.
> . . .
> Q.  And looking at this picture and based on your two observations out there, is there anything wrong with this drainage facility that you can see?
> A.   Yeah, there's – there's something there that is odd. It's not a standard structure. It appears it's been added onto.
> Q.  Can you just by looking at this picture tell what appears to be added on?
> A.  It looks like that – possibly that concrete lid.
> . . .
> Q.  Well, by looking at it, can you tell how old it is –
> A.  No.
> . . .
> Q.  Could you tell what material this used?
> A.  It does appear to be concrete.
> Q.  . . . Does this look like something you would be able to – average consumer buy, or is this some kind of specialized engineering piece?
> A.  A consumer can buy that.

Mr. Woerdeman further testified that, in contrast to the appearance of the drainage facility on Claimant's property, the State typically employed an "open channel design" (or a

"ditch") when creating drainage facilities. Mr. Woerdeman speculated, "It's more than likely -- like I said, it's hypothetical. But it wouldn't be the first time somebody placed pipe in the ditch and hooked it up to a structure without anyone's knowledge. People don't like to mow ditches."

The State moved for summary judgment arguing that Claimant failed to offer any evidence that the State installed the drainage structure and that the State is not responsible for maintaining materials it did not place on the easement. The State supported its motion and statement of undisputed material facts with a 2013 Warranty Deed; the State's 1997 easement; excerpts from the deposition of Claimant from his prior case against Metro; and excerpts from the deposition of Mr. Woerdeman. Claimant responded to the State's motion for summary judgment and submitted his declaration, stating that the drainage issues examined in his prior case against Metro are separate from his claims regarding the drainage facility at issue in this case and that the State was required to maintain the drainage facility per the terms of the easement. Claimant also attached the full deposition of Mr. Woerdeman and discovery responses in support of his arguments.

After holding a hearing, the Claims Commission granted summary judgment to the State, holding:

> The record before the Tribunal is consistent with the facts cited in the opinion by the Court of Appeals in Mr. Walker's case against Metropolitan Nashville. As the facts demonstrate here, Mr. Walker purchased the subject property through a distress sale. He did not conduct a home inspection. He did not inspect the property during rainy conditions. Someone, probably the prior homeowner, attached a strange combination of non-standard reinforced concrete and corrugated metal to the drainage facility to funnel the water. The State did not install the damaged pipe, nor pipe necessary for the use of the subject easement. Now the makeshift addition is broken and is causing damage to the property.

In sum, the Commissioner determined, "The Claimant, as the landowner, is responsible for the [alteration] of the drainage facility." Claimant moved to alter or amend the judgment, but the Commissioner denied his motion. Claimant appeals asserting that "the Claims Commissioner erred when he granted the State's Motion for Summary Judgment relying on clearly disputed facts."

STANDARD OF REVIEW

This appeal arises from the grant of summary judgment by the Claims Commission. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

In this case, the party moving for summary judgment does not bear the burden of proof at trial. Thus, the burden of production could be satisfied by either "affirmatively negating an essential element of the nonmoving party's claim" or by "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate"; the moving party must set forth specific material facts as to which the movant contends there is no dispute. *Id.* Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery materials that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250. This means that we must review the record de novo and "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.*; *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 847 (Tenn. 2017). We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

ANALYSIS

It is uncontroverted that the State has a "permanent easement" on Claimant's property for "construction and maintenance of a drainage facility." Claimant asserts that the State failed to maintain the drainage facility, which caused flooding and damage to his home constituting a nuisance or a taking.[1] The State maintains that it did not construct the

---

[1] "'The State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued.'" *Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (quoting *Brewington v. Brewington*, 387 S.W.2d 777, 779 (Tenn. 1965)). Pursuant to Tenn. Code Ann.§ 9-8-307(a)(1)(B) and Tenn. Code Ann.§ 9-8-307(a)(1) (V), the State has consented to be sued for "[n]uisances created or maintained" and for "[u]nconstitutional taking of private property, as defined in § 12-1-202, including intentional state governmental action resulting in a taking . . . ." The Tennessee Supreme Court has explained what constitutes a nuisance as follows:

faulty drainage structures on the easement and that the State is not responsible for maintaining structures it did not install. To resolve the issue, we must determine the State's obligation with respect to its easement and the drainage facility thereon.

"An easement is an interest in property that confers on its holder a legally enforceable right to use another's property for a specific purpose." *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998). An easement, however, "is not an interest in the ownership of the underlying real property." *Gore v. Stout*, No. M2006-02111-COA-R3-CV, 2008 WL 450597, at *11 (Tenn. Ct. App. Feb. 19, 2008). Easements can be created in the following ways: "(1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain." *Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n*, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. Aug. 21, 2006) (citing *Pevear v. Hunt*, 924 S.W.2d 114, 115-16 (Tenn. Ct. App. 1996)). In this case, the easement was granted by express grant through a recorded warranty deed; therefore, the extent of the easement is determined by the language of the grant, and the use of the easement must be confined to the purpose stated in the grant. *City of Jackson v. Walker-Hall, Inc.*, No. W2004-01612-COA-R3CV, 2005 WL 1834114, at *7 (Tenn. Ct. App. Aug. 3, 2005) (citing *Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn. 1939); *Henry v. Tenn. Elec. Power Co.*, 5 Tenn. App. 205, 208 (Tenn. Ct. App. 1927)).

Regarding an easement-holder's obligation for maintenance of structures on an easement, the case *Yates v. Metro. Gov't of Nashville & Davidson Cnty.*, 451 S.W.2d 437 (Tenn. Ct. App. 1969) is instructive. In *Yates*, a private firm developed land—"built streets, laid water lines, and built a pumping station"—near the southwest corner of the plaintiffs' property. *Yates*, 451 S.W.2d at 439. A twenty-foot utility easement extended from the pumping station to the street, and a driveway, with associated ditches, was also built upon the easement. *Id.* The ditches diverted surface water onto the plaintiffs' property. *Id.* After the development was completed, the pumping station and pipes in the subdivision were conveyed to a Nashville utility district. *Id.* The utility district used the driveway for access to the pumping station but did not modify the driveway or the ditches. *Id.* Later, the Department of Water and Sewage Services of the Metropolitan Government of Nashville and Davidson County acquired the utility district's operations and used the

> A common-law nuisance is a tort characterized by interference with the use or enjoyment of the property of another. A nuisance is anything that annoys or disturbs the free use of one's property or that renders the property's ordinary use or physical occupation uncomfortable. It extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of the property.

*Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013) (citations omitted). A nuisance-type taking "occurs when the governmental defendant interferes with a landowner's beneficial use and enjoyment of the property." *Edwards v. Hallsdale-Powell Util. Dist. Knox Cnty., Tenn.*, 115 S.W.3d 461, 465 (Tenn. 2003). The State does not dispute that immunity has been removed in this case.

driveway to the pumping station but did not alter it. *Id.* The plaintiffs experienced flooding of their house and sued Metro for damages, arguing that Metro was obligated to maintain the easement despite the fact that it did not construct the drainage infrastructure. *Id.* at 440. The *Yates* court determined that plaintiffs were not entitled to relief from Metro, holding: "[n]o authority has been cited or found which holds the user of an easement liable for failure to remove from the territorial bounds of the easement a nuisance which was placed or created thereon before such user began to use such easement." *Id.* at 443. The court explained that a holder of an easement "is responsible for proper maintenance of what he puts on the easement to facilitate his use of the easement[,]" but there is no duty to "remove from such land any nuisance placed thereon by other and previous users." *Id.* at 441, 442; *see also Riverland, LLC v. City of Jackson Tenn.*, No. W2017-01464-COA-R3-CV, 2018 WL 5880935, at *12 (Tenn. Ct. App. Nov. 9, 2018) (finding the City of Jackson was not liable for the diversion of water onto plaintiff's property where the city did not construct the pipes that were diverting storm water).

On the facts presented here, there is no evidence to suggest that the State constructed or installed the concrete drainage structure at the center of Claimant's allegations. Indeed, Mr. Woerdeman succinctly explained in his sworn interrogatory responses that "the modifications and pipe [on Claimant's property] were not installed by TDOT and did not comply with TDOT standard specification." Claimant mistakenly equates the "drainage facility" described in the State's easement with the concrete box pictured as an exhibit to his claim; however, Mr. Woerdeman explained that a "drainage facility" is a more encompassing term that describes any drainage structure used to convey water. Claimant presupposes that the rectangular concrete structure on his property was installed by the State; however, according to Mr. Woerdeman, the concrete structure Claimant alleges is the source of the flooding is "a little funky"; not recognizable as "anything TDOT has"; "not a standard structure"; and could be purchased by "a consumer." Importantly, Mr. Woerdeman explained that the State typically employs an "open channel design" or "ditch" for its drainage facilities rather than the enclosed channel containing non-standard materials that exists on Claimant's property. Given that the Claimant has not come forward with any evidence that the State constructed or installed the drainage structures he references in his complaint, we hold, like the court in *Yates*, that the State had no duty to remove or maintain the drainage materials placed on Claimant's property by other and previous users. *See Yates*, 451 S.W.2d at 442. As such, we affirm the Claims Commission's grant of summary judgment to the State and conclude that the State is not responsible for the flooding on Claimant's property.

CONCLUSION

The judgment of the Claims Commission is affirmed. Costs of this appeal are assessed against the appellant, Charles E. Walker, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE