H. B. HENRY v. TENNESSEE ELECTRIC POWER CO., et al.

Eastern Section.   May 21, 1927.

Petition for Certiorari denied by Supreme Court, October 11, 1927.

1. **Deeds.** Deed giving grantee right to do certain things held to convey only a special right and not a general right.
   Where a deed to an electric transmission company conveyed to it the right to erect, maintain, repair, etc., certain lines and poles and towers over the land conveyed, held that the grantee received only a special right to do the things enumerated in the deed and did not have a general right to use the land for added burdens.

2. **Easements.** The extent of an easement must be determined by the grant.
   The extent of an easement is determinable by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstance which have a legitimate tendency to show the intention of the

party. It is not proper, however, to refer to the parol negotiations which preceded or accompanied the execution of the instrument. If the grant is specific in its terms, it is of course decisive of the limits of the easement.

3. **Easements. Easements must be construed strictly.**
The use of an easement must be confined strictly to the purpose for which it was granted or reserved. One granting an easement may limit the grant in any way he chooses, and the grantee takes subject to the restrictions imposed.

4. **Estoppel. Evidence held not to show an estoppel.**
Where a transmission company had an easement for a right-of-way over plaintiff's land for the purpose of erecting poles and towers and they attempted to build thereon a transformer and purchased a roadway over plaintiff's land to transport the transformer to the right-of-way held that the selling of the roadway could not work an estoppel upon the plaintiff to object to the erection of the transformer.

5. **Injunction. Injunction properly issued to restrain one from the misuse of an easement.**
Where a transmission company having an easement for a right-of-way for lines over plaintiff's property sought to build a transformer thereon and the plaintiff asked an injunction to prevent the erection of the transformer because it was beyond the uses provided for in the easement, held that the injunction was properly issued.

6. **Injunction. Injunction will lie to restrain a public service company from appropriating land before paying damages or securing the payment of damages.**
Where a transmission company had been enjoined from erecting a transformer and the evidence showed that it had not paid the owner of the land for the damage done to his property or secured the payment of the same, pending the determination, held that the injunction would lie.

Appeal from Chancery Court of Blount County; Hon. Ben Robertson, Chancellor.

Affirmed.

Gamble, Crawford & Goddard, of Maryville, for appellee.

Brown & Johnson, of Maryville, for appellant.

PORTRUM, J. H. B. Henry is the owner of a small tract of forty-eight acres of land lying between the towns of Maryville and Alcoa, favorably situated because of its location. The Tennessee Electrical Power Company procured a right-of-way over a portion of this land in the year 1913, through its predecessor, over which it erected poles and strung power wires, as well as telephone wires. Recently the Power Company undertook to build and install a transformer upon this right-of-way, when Henry protested, and it attempted to make the installation without regard to the protest. Then Henry filed his bill and enjoined the company from installing the transformer, alleging that all the right that the Tennessee Electrical Power Company had was included in the grant given to the company in 1913, and that said grant was not broad enough to include the erection of the transformer, and, therefore, the complainant Hen-

ry claimed the right to enjoin the company from going upon the land and establishing an additional burden upon the easement.

The company answered and advanced the following defenses:

First,   The deed or grant was general, and carried with it the right to establish substations upon the right-of-way.

Second, That Henry, by his conduct, had estopped himself to resist their right to establish the substation upon the right-of-way.

Third, That the company was a public service corporation and endowed with the rights of eminent domain, and it had taken possession of the right-of-way and had moved the transformer thereon, and it could not be ejected, the landowner's only remedy being a suit at law for damages.

Application was made to the Chancellor immediately for a dissolution of the injunction, when he declined to dissolve the injunction but modified it to the extent that the Power Company was left free to exercise its rights of eminent domain and condemn the right-of-way for substation purposes or general purposes.

The case was heard upon the pleadings and proof, a great many depositions being taken, when the Chancellor was of the opinion that the grant from Henry to the Power Company in 1913 was a special grant and was not broad enough to include the erection of the transformer or substation. He also was of the opinion that Henry's conduct did not estop him from asserting his claims, and that the Power Company had not proven its right to exercise the privileges of eminent domain, nor had it shown itself entitled to remain upon the property without the prepayment of damages.

The action of the court is assigned as error.   The separate assignments will not be considered.   The three defenses will be dealt with, which will dispose of the questions made under the assignments.

## I.

We think the Chancellor was correct in holding that the deed of 1913 granted only a special right and not a general right, the language is as follows:—"do hereby grant, sell and convey unto the party of the second part, its successors and assigns, the perpetual rights, privileges and easement to enter and erect, maintain, repair, re-build, operate and patrol one or more lines of poles and towers, and wires or cables strung upon and from pole to pole and from tower to tower for the transmission of electric current, with all necessary foundations, anchors, guys and braces, to properly support and protect the same, and also a telephone or telegraph line or lines, with all necessary poles, cables, wires, appliances and fixtures for said lines, upon, over and across the lines owned by the party of the first part, . . .

"That this is not a conveyance of the fee in said land but only of the rights, privileges and easements therein set forth. The party of the first part may cultivate the land under said lines or wires in such a way as not to interfere with the rights and privileges hereby granted, or the uses and purposes herein set forth."

At the time this deed was executed in 1913, up until the present time, the right-of-way has been used for the purposes specified in the deed. We do not think the parties contemplated the erection of substations, a substation being a house in which is contained transformers, upon this right-of-way. The parties undertook to name in detail the rights conveyed. Under the rights first specified the company could have maintained the telephone and telegraph wires, but it saw fit, or the parties did, to designate the different character of wires to be strung and maintained. The deed also designates anchors, guys and braces, and we think if substations had been contemplated they would have been named, and since the parties undertook to name such rights as was intended to be granted, then all other rights were excluded.

"The extent of an easement is determinable by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendence to show the intention of the party. It is not proper, however, to refer to the parol negotiations which preceded or accompanied the execution of the instrument. If the grant is specific in its terms, it is of course decisive of the limits of the easement. On the other hand, where the easement is not specifically defined the rule is that it need be only such as is reasonably necessary and convenient for the purposes for which it was created.

"The use of an easement must be confined strictly to the purpose for which it was granted or reserved. One granting an easement may limit the grant in any way he chooses, and the grantee takes subject to the restrictions imposed. Thus, if a right-of-way is given to cross the land of another for certain specified purposes, not including the right to cross to a barn, and the grantee subsequently builds a barn on his land, he has no right to use the way as a means of access to the barn. But a grant of a right-of-way for all purposes is not restricted to one purpose because the owner thereof has had occasion for a long time to use it for that purpose only. A grant or reservation of an easement in general terms is limited to a use such as is reasonably necessary and convenient, and as little burdensome to the servient estate as possible for the use contemplated." 9 R. C. L., pp. 785, et seq.

"If the grant is for a particular purpose the grantee cannot use it for any other, or if it is granted for the benefit of some particular land, it cannot be used for accommodation of land adjoining or lying

beyond. Where a way is granted or reserved without limitations as to its use, it will not necessarily be confined to the purposes for which the land was used at the time the way was created.

"Where an easement exists by express grant its use must be confined to the terms and purposes of the grant, but may of course be used in accordance therewith. But the owner of the dominant tenement cannot increase the servitude imposed on the servient tenement.

"Easements by express grant or reservation must be limited to the matters contained in the deed to determine the extent of the right granted. In no case does the extent of the right acquired by grant depend upon user. The servient estate will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement. Nothing passes by implication as incident to the grant except what is reasonably necessary to its fair enjoyment." 19 C. J., Easements, sec. 219.

## II.

The company bases its claim of estoppel upon the following facts: Henry permitted the company in 1924 to erect a transformer upon the right-of-way and for the purpose of hauling in and out in order to erect the first transformer the company purchased from Henry a roadway and the company gave him $100 for this right. It is true he did not know what the company was going to do, when he sold the right-of-way to enable the company to haul over the high ground into their power line right-of-way, which was located in low, wet ground, but he knew they were going to haul something heavy, and he later saw them erecting the transformer. This right was to extend for one year only.

The description contained in the instrument shows that the right conveyed was only a right-of-way for hauling from the Louisville road, which we assume was a public road, to the company's power line.

Now it is claimed that H. B. Henry's conduct in this matter established an equitable estoppel against him and he will not be permitted to deny the company's right to erect this second transformer.

We do not feel it necessary to review the many cases cited defining the doctrine of estoppel. It is sufficient to say that the Power Company was not injured in any way by the conduct of Henry. It is elementary that one of the elements of estoppel is damage to the party asserting the estoppel. A judicial estoppel is effective in the absence of damage to the party asserting the estoppel, but is so only because of public policy. An equitable estoppel is never effective in the absence of damage to the party asserting it.

The fact that Henry sold the wagon road leading to the right-of-way for the purpose of moving in the first transformer did not in-

jure the company. It would have been necessary for it to have purchased this roadway had he then asserted his right to damage. It is true that at the time, probably the company and Henry both were ignorant as to Henry's rights, the company may have thought it had a right to enter and erect a transformer. This was only a mistake of law on its part. This is not the case of where one stands by and permits another to erect a building upon one's land, while the other thinks he is erecting it upon his own land. Had Henry notified the company of his rights in the premises, nevertheless, it would have had to erect the transformer at the same place, and, of course, it was not injured by Henry's failure to assert his claim. The company had the same knowledge Henry had and is in no position to insist that it was misled by Henry's silence.

## III.

We do not think the Chancellor erred in perpetually enjoining the company from occupying and erecting the transformer upon the right-of-way, because we believe, with the Chancellor, that the company held the right-of-way under the terms and conditions of the original deed. It had no right to appropriate the lands of Henry in this manner. It must be remembered that it was not restrained from prosecuting condemnation proceedings, and also, that the company did not attempt in this cause to exercise that right, by first giving bond to pay the damage and then occupying the ground, it elected to permit its transformer to remain, for two or more years, upon the edge of the road on the right-of-way, and it now claims that since it has its transformer upon the edge of the right-of-way, it cannot be ejected, and an injunction suit, enjoining it from using the right-of-way, is in effect an ejectment suit.

It may be that the transformer cannot be removed from the place where it is, if the company is, in fact, a public service corporation attempting to exercise the right of eminent domain. Yet, certainly, Henry has the right to apply to the court to restrain the company from going further upon the ground, pending the payment or securing of his damages. So, if the company be, in fact, a public service corporation, then the Chancellor correctly enjoined it from the use of the right-of-way, since the company made no offer to pay or secure Henry's damages. "But such a corporation about to enter upon land to appropriate it without the institution of condemnation proceedings, or not in pursuance of any charter provisions, may be enjoined in equity until compensation shall be secured or paid; that is, enjoined from further using the land until such security is given or compensation paid. Parker v. Railroad Company, 81 Tenn., 669; White v. Nashville Railway Company, 54 Tenn., 528." Railway & Light Company v. O'Fallen, 130 Tenn., 270, 120 S. W., 55.

After the lower court had prepared its opinion in the case counsel for the company moved the court to remand the case to the rules in order that it might prove its charter, which would establish the fact that it was a public service corporation entitled to exercise the right of eminent domain. The court denied this application. We do not think this was an abuse of the court's descretion, and if the proof were in the record, still the complainant Henry would be entitled to enjoin the company until it had paid or secured him his damages. The company has had ample opportunity heretofore to have exercised this right by giving bond in this case, but since it did not do so, and the way is still open for it to proceed in the circuit court, the decree of the Chancellor is affirmed. The appellant will pay the costs of the appeal.

Snodgrass and Thompson, JJ., concur.