HORTON et al. v. SHACKLETT et ux.—95 S. W. (2d) 936.

Middle Section. January 18, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

Hulen C. Walker and Wm. C. Bowen, both of Nashville, Edward Sugg, of Dickson, and E. L. McNeilly, of Nashville, for appellants Horton and others.

Walter Stokes and J. Gordon Shanklin, both of Nashville, for appellees Shacklett.

CROWNOVER, J. This suit involves an easement in a spring.

The original bill asked for a mandatory injunction commanding the defendants to remove a fence which obstructed complainants' use of the spring, and for damages sustained by complainants as the result of being deprived of the use of the water of the spring.

Complainants contend that their easement entitles them not only to the use of the water of the spring, but also to have their livestock to go upon or over defendants' land to drink water at the spring branch.

Defendants conceded the fact that complainants had an easement in the spring, but contended that they had traced the spring to its source, which was outside of their fence, and had constructed a concrete basin there, and this concrete basin was the place where complainants were entitled to get their water supply and not the old rock basin which defendants had fenced in. They further contend that complainants are not entitled to have their livestock go upon their (defendants') lands to drink at the spring branch.

The chancellor held that complainants were entitled to use the waters from the original spring, known in the record as the "rock basin," for stock and domestic purposes, but that this did not include the right to have their livestock go upon the defendants' land to procure water at the spring branch; and that complainants are entitled to this water in such way as they deem necessary, and which may be a reasonable use thereof for these purposes. He decreed that injunction issue directing defendants to erect gates in said fence or make other provision for complainants' ingress and egress to the rock basin.

Complainants excepted to that part of the decree in which it was decreed that they were not entitled to have their livestock go upon defendants' land to procure water at the spring branch, and to the court's failure to decree damages, and appealed to this court and have assigned as errors the court's said action.

On February 11, 1888, C. A. Thompson and others, children and heirs at law of Felix Compton, deceased, conveyed to Emily G. Comp-

ton a 100-acre tract of land on the Granny White pike, about five miles from Nashville.

Emily G. Compton conveyed said land to Kate Thompson Kirkman on October 1, 1895.

Mrs. Kate T. Kirkman conveyed to Josephine Hirsig, on September 27, 1911, the north half of said tract, containing 51.6 acres, reserving the following easement:

"Reserving and retaining for the use and benefit of the owner of southern half of said Compton tract and any present and future owner thereof, the right and easement to use water from the spring on the above described premises and of ingress to and egress from said spring over, upon and across said premises hereby conveyed for the purpose of obtaining and using said water and for the purpose of installing and maintaining a pumping system by laying pipes on said premises between said spring and the south half of said tract and repairing same from time to time as may be necessary to the end that the owner of the south half of said Compton tract shall enjoy a free and perpetual easement of use of water from said spring for stock and domestic purposes, such easement to be grantable by me to any purchaser of said south half and operate as a covenant running with the land."

Josephine Hirsig and husband conveyed to Emerson E. Horton, on October 15, 1918, a part of said tract, containing 9.08 acres at the southeast corner of said tract, designated lot 25, Zenaida place. The deed contained the following provision:

"And the said Mrs. Josephine Hirsig and husband W. G. Hirsig agree thereby that the said Emerson E. Horton shall have the right and easement to use water from the spring on Lot No. 20 for stock and domestic purposes."

Josephine Hirsig conveyed the west 30.74 acres of this tract, designated lot No. 20, Zenaida place, on May 14, 1928 to Sam W. Shacklett and wife; the deed reciting:

"The property above described is conveyed subject to easement set out in deed from Mrs. Josephine Hirsig and husband, W. G. Hirsig, to Emerson E. Horton, recorded in Book 519, page 217, to which reference is hereby made."

Emerson E. Horton died intestate in Davidson county, March 23, 1929, leaving surviving him his widow and three children, who are the complainants in this cause.

The Hirsig tract was a parallelogram, containing 51.6 acres, fronting on the Granny White pike. It is now owned as follows: (1) Shacklett owns three-fifths of same, 30.74 acres, lot No. 20, fronting on the Granny White pike; its southern boundary is Battery Lane. (2) The Hortons own 9.08 acres, lot No. 25, at the southeast corner of the tract, at the rear of the Shacklett tract; their western boundary

being part of the Shacklett eastern boundary. The Horton place fronts on Battery lane. (3) Mrs. Hirsig still owns 11.78 acres, lot No. 24, at the northeast corner of the track; its southern boundary being the northern boundary of the Horton tract and its western boundary being a part of the Shacklett eastern boundary. A branch runs along the Shacklett eastern boundary, just inside of same. There is a large spring on the eastern bank of the branch, also within the Shacklett boundaries. This is the spring in which the Hortons, the Hirsigs, and the owners of the southern half of the old Compton tract have easements. It is a large spring with an almost inexhaustible supply of water. It appeared to originate or rise in a large rock basin near the bank of the branch, and the water flowed northeastwardly to an old rock spring house, and thence into the branch. The rock basin has been located there for many years.

There was formerly an old road or passageway, running diagonally across the tract, between the Shacklett tract and the other two tracts, but it has been abandoned. The center of this road is the boundary line between the tracts.

After Emerson E. Horton purchased the 9.08-acre tract in 1918 (which was ten years before Shacklett bought the front tract), he rented from Mrs. Hirsig the rest of the tract and conducted a dairy, his cattle on the whole tract drinking at the branch where the water from the spring ran into same.

After Shacklett purchased lot No. 20, the Hortons continued to rent lot 24 from Mrs. Hirsig until about May, 1933. Since that time Mrs. Horton has rented the Cheek place, several miles off, for pasture for her cows.

Shacklett testified that when he purchased lot No. 20 the spring was full of mud; that he had the water analyzed and found it contained bacilli; that a big rain caused the creek to rise around the rock basin; that he noticed water bubbling out of the ground in a low place several feet from the rock basin; that he dug from that point to the rock basin and found a stream of water; that he followed the stream back to a point where the water came out between two rocks; that he constructed a concrete basin over this outlet, the basin about three and one-half feet deep, the top about level with the ground; that he laid a tile connection from the concrete basin to the rock basin; that the concrete basin is 23.3 feet east of the rock basin.

Soon after the construction of the concrete basin, Shacklett erected a fence along his eastern line, inclosing both the rock basin and the concrete basin, but placed gates on Battery lane and in his eastern fence at the Hirsig property, which was leased by complainants, and the Hortons carried their live stock through these gates to drink at the branch.

Just before the original bill in this cause was filed, Shacklett moved

his fence about 18 feet back, leaving the concrete basin outside but inclosing the rock basin; no gates being in the fence.

It is impossible for cattle or hogs to drink out of either the concrete basin or the rock basin.

Several witnesses testified that they had known this spring for many years and the spring was in the rock basin. Shacklett and Carney testified that the spring came to the surface at the concrete basin, and that the water came out from between two rocks where the concrete basin was constructed. The chancellor held that complainants had an easement in the rock basin, and defendants have not appealed from this decision.

There are only two questions in this suit: (1) Have the complainants Horton a right to have their cattle and livestock go upon defendant Shacklett's land to drink water at the spring branch? (2) Are complainants entitled to damages on account of having been deprived of the use of the water?

1. We are of the opinion that the chancellor was correct in holding that complainants Horton have a right to obtain water from the rock basin for domestic use and for their livestock, or to pump same from the rock basin, but have no right to have their livestock go upon defendants' land to drink from the spring branch.

"A grant or reservation of an easement in general terms is limited to a use such as is reasonably necessary and convenient, and as little burdensome to the servient estate as possible for the use contemplated." 9 R. C. L., 787, sec. 44; Jones on Easements, secs. 99 and 100.

"Where the easement is not specifically defined the rule is that it need be only such as is reasonably necessary and convenient for the purpose for which it was created." 9 R. C. L., 785, 786, sec. 43.

An easement permitting the Hortons to use the water of the spring for domestic use and for watering livestock cannot be construed to permit them to drive a herd of cattle to the spring on defendants' land.

2. There is no evidence by which the court can determine the amount complainants were damaged by being deprived of the use of the water from the spring. They didn't show what it would have cost to purchase from the city the water needed for the cattle, and how much they were damaged.

It results that the assignments of errors must be overruled, and the decree of the chancellor will be affirmed.

The complainants acquired no rights by prescription, and the fact that they permitted their cattle to go over and drink out of the spring branch gave them no rights that they had not acquired by express grant, and it does not aid in the interpretation of the easement be-

cause Horton had the other tract rented and had a right to let his stock run over both tracts.

Defendants did not appeal, so their contentions that Mrs. Horton had abandoned the use of the spring need not be considered.

The cost that accrued in the lower court will remain as decreed below, but the cost of the appeal is decreed against appellants Horton and others.

Faw, P. J., and DeWitt, J., concur.