IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MARCH 17, 2005 Session

## CITY OF JACKSON, TENNESSEE v. WALKER-HALL, INC., ET AL.

### Direct Appeal from the Circuit Court for Madison County
No. C01-130      Roger A. Page, Judge

---

### No. W2004-01612-COA-R3-CV - Filed August 3, 2005

---

This is an action to recover for damage done to personal property. During the course of a road improvement project, the city placed some heavy equipment and debris alongside the roadway being repaired. An employee of the corporate owner of the land abutting the roadway noticed the debris and an excavator parked adjacent to the roadway during a route inspection of the property. Believing the debris and excavator to be on his employer's land, the employee had the excavator towed. Apparently, the towing company selected by the landowner's property manager severely damaged the excavator during the course of removing it. The city subsequently filed suit against the landowner and several other defendants claiming they had negligently harmed the city's personal property. The trial court held that the landowner was negligent and committed a trespass against the city. The landowner appealed, and we reverse the decision of the trial court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

David J. Sneed, Brentwood, TN, for Appellants

J. Brandon McWherter, Lewis L. Cobb, Jackson, TN, for Appellee

**OPINION**

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 1999, the City of Jackson, Tennessee ("City" or "Appellee"), undertook a project to repair and resurface Walker Road. Walker Road, which runs north and south, is bounded on the east by West Towne Commons Shopping Center ("West Towne Commons"). The City has a right-of-way encompassing eight (80) feet along Walker Road — forty (40) feet on each side of the centerline of the roadway. Walker Road is approximately twenty (20) feet wide, therefore, the City possesses a right-of-way consisting of thirty (30) feet on each side of the paved surface. In addition, the City possesses a utility easement which extends an additional twenty-five (25) feet beyond its right-of-way on either side of Walker Road. Thus, the City has the ability to use fifty-five (55) feet of the property located on either side of Walker Road. During the course of the project to repair and resurface Walker Road, the City placed materials and equipment on the eastern side of Walker Road closest to West Towne Commons in an area it used as a staging area for the project.

Walker-Hall, Inc., d/b/a Broadmoor Investment Corporation ("Walker-Hall" or "Appellant"), a Tennessee corporation, owns West Towne Commons. Walker-Hall hired Trammell Crow Tennessee, Inc., d/b/a Trammell Crow Residential Services ("Trammell Crow"), to manage West Towne Commons. Maria Hopper ("Ms. Hopper"), an employee of Trammell Crow, served as the property manager for West Towne Commons during the period of time at issue in this case.

In April of 1999, William Scarbrough ("Mr. Scarbrough"), the director of development for Walker-Hall, upon returning from a business trip in Atlanta, stopped in Jackson to inspect West Towne Commons. Upon driving through West Towne Commons, Mr. Scarbrough noticed piles of debris and a 1988 model John Deere excavator sitting adjacent to Walker Road. Mr. Scarbrough did not get out of his vehicle and stated that he did not see any markings on the excavator identifying its owner. In fact, the excavator had a logo about two to three feet in size identifying it as the property of the City. Believing that the debris and the excavator were sitting on property owned by Walker-Hall, Mr. Scarbrough called Ms. Hopper and instructed her to have the excavator removed. Ms. Hopper contacted three towing companies and ultimately selected S & M Towing & Recovery ("S & M Towing"), a business operating within the City, to remove the excavator.

When S & M Towing removed the excavator, the key which operates the electrical components on the machine had been removed by the City's employees after they parked it. The City's employees stated that the machine can be started and moved without the key, however, a key is required to operate the electrical components on the excavator. When operating the machine without a key, the driver cannot switch from low gear to a higher gear. Employees of the City testified that they left machine in low gear when they parked it. They also stated that, before S & M Towing removed the excavator from Walker Road, the excavator worked properly. The supervisor for the Walker Road project, O'Neal Thomas ("Mr. Thomas"), stated that his crew checked the oil in the excavator every morning before they began using it.

After S & M Towing removed the excavator and took it to its facility some ten to fifteen miles from Walker Road, the City sent two employees to retrieve it. One of the City's employees stated that, when he inspected the machine at S & M Towing, it was still in low gear. The other employee sent to retrieve the excavator stated that they had to add eleven quarts of oil to the machine. The employees started the excavator, but when they attempted to load it onto the trailer, they noted that it did not have any power and would barely move. The City's employees opined that the damage they found was consistent with driving the excavator in low gear for approximately ten to fifteen miles. The City ultimately had the excavator repaired.

Thereafter, on April 16, 2001, the City filed suit against Walker-hall, Mr. Scarbrough, S & M Towing, Trammell Crow, and Ms. Hopper[1] in the Circuit Court of Madison County, Tennessee. When S & M Towing failed to answer the complaint, the City moved for a default judgment against them. On March 13, 2002, the trial court entered an order granting the City a default judgment against S & M Towing and reserved an award of damages pending the outcome of the case.[2] Walker-Hall and Mr. Scarbrough filed an answer to the City's complaint asserting, as an affirmative defense, that the City trespassed on property owned by Walker-Hall when it placed the materials and excavator where it did.[3]

In bringing this lawsuit, the City sought damages for the cost of repairing the excavator, loss of use of the excavator, and loss of the time expended by its employees in recovering the excavator. During the trial, the City's employees testified as to the condition of the excavator before and after S & M Towing removed it from Walker Road. Barbara Long ("Ms. Long"), the City's records custodian at the time of the events giving rise to the lawsuit, presented an invoice in the amount of $11,296.14 representing the cost of repairing the excavator and testified concerning the number of hours the City's employees spent retrieving the excavator. Although there was no proof that the City actually rented a replacement excavator or needed the use of one while its excavator was being repaired, the City nonetheless presented testimony concerning the rental cost of a replacement excavator.

Following a bench trial, the trial court entered a final judgment on June 2, 2004, in favor of the City and against Walker-Hall and S & M Towing in the amount of $11,296.14. The court dismissed the City's action against Trammell Crow, Ms. Hopper, and Mr. Scarbrough. In issuing

---

[1]The City's original complaint did not name Trammell Crow and Ms. Hopper as defendants. The City subsequently amended its complaint to add them as defendants.

[2]S & M Towing, owned and operated by Mike and Sarah Pierce, did not file a notice of appeal in this case, therefore, we do not consider any issues related to the trial court's grant of a default judgment to the City in adjudicating the instant appeal.

[3]Walker-Hall and Mr. Scarbrough filed an original answer and two amended answers in this case. . The trespass defense was raised in the second and third amended answers. In the third amended answer, Walker-Hall asserted several additional defenses, which, for purposes of this appeal, we need not address.

its final judgment, the trial court incorporated its memorandum opinion issued just prior to the final judgment, wherein the court stated:

> After considering the evidence and the credibility of the witnesses, the Court makes the following determinations by a preponderance of the evidence:
>
> 1.   The excavator owned by the City of Jackson was in good working order when placed near the intersection of Channing Way and Walker Road on April 29, 1999.
> 2.   After considering the testimony of the City employees and the individual defendants and thoroughly reviewing the plat, deed, and pictures, this Court has concluded that the excavator was parked by the City of Jackson employees on property owned or within control of the City of Jackson.
> 3.   The excavator's engine was damaged by S & M Towing & Recovery when it was moved to that company's premises approximately ten to fifteen miles away. The excavator was moved by someone who did not know the proper method for moving it.
> 4.   The excavator was clearly marked as property of the City of Jackson.
>
> The Court had concluded that the excavator was parked by the City of Jackson employees in a proper area. Mr. Scarbrough saw the excavator in an area that he thought was owned by his employer. He admitted that he did not get out of his automobile to examine the excavator. He also admitted that if he had known it was owned by the City of Jackson he would have handled the situation in a different manner. Under the circumstances, Mr. Scarbrough should have attempted to determine the ownership of the excavator before having it towed. The failure to investigate the matter was clearly negligent.
>
> . . . .
>
> The testimony of the City of Jackson employees has proven to this Court by a preponderance of the evidence that the engine of the excavator was damaged by the towing and had to be replaced. The City of Jackson has proven the necessity of replacing the engine. Defendants challenge the reasonableness of the amount charged for replacing the engine. This Court has considered the amount of the bill for replacing the engine and concluded that it is reasonable. Moreover, Defendants presented no evidence to contest the amount

-4-

of the repair bill. The Court has also considered the evidence of loss of use of the excavator and loss of time of the city employees and concluded that the evidence is inadequate to support a judgment.

The Court has further concluded that Walker-Hall, Inc. should be responsible for the negligent acts of the employees of S & M Towing & Recovery. Mr. Scarbrough was acting in his capacity as agent of Walker-Hall, Inc. when he directed Ms. Hopper to have the excavator towed. In this Court's view, Walker-Hall, Inc. exercised enough control over the right to employ the towing company to impose responsibility. In addition, the Court has concluded that Walker-Hall, Inc. participated in a trespass and is responsible for the action of S & M Towing.

(citations omitted).

Walker-Hall filed a notice of appeal to this Court and presents the following issues for our review:

1.  Whether the trial court erred in finding that the City parked the excavator on property owned or within the control of the City at the time of its removal by S & M Towing;
2.  Whether the trial court erred in finding that Walker-Hall was negligent in removing the excavator; and
3.  Whether the trial court erred in finding that the City had properly proven the amount of damages award by the trial court.

For the reasons set forth more fully herein, we reverse the decision of the trial court.

## II.
### STANDARD OF REVIEW

Since we are asked to review a decision rendered by the trial court sitting without a jury, we must employ the standard of review set forth in Rule 13(d) of the Tennessee Rules of Appellate Procedure. Thus, we must review the record *de novo* affording the trial court's findings of fact a presumption of correctness unless the preponderance of the evidence proves otherwise. Tenn. R. App. P. 13(d) (2004); *see also Conatser v. Ball*, No. M1999-00583-COA-R3-CV, 2001 Tenn. App. LEXIS 569, at *7 (Tenn. Ct. App. Aug. 3, 2001). We must review the trial court's conclusions of law under a pure *de novo* standard of review without affording any presumption of correctness to those conclusions. *S. Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). A significant portion of the evidence presented in this case was testimonial in nature, therefore, we are mindful that:

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best

-5-

situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics. Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

*Wells v. Tenn. Bd.oOf Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Mitchell v. Archibald*, 971 S.W.2d 25, 29-30 (Tenn. Ct. App. 1998).

## III.
### LAW AND ANALYSIS

### A.
### *The Location of the Excavator*

Although the City's original complaint did not clearly state the City's theory of recovery against Walker-Hall, after reading its amended complaint and brief filed on appeal, it appears as though the City sought recovery from Walker-Hall and the other defendants under a negligence theory. The trial court's written findings allude to negligence as the City's legal basis for recovery. The trial court determined that Mr. Scarbrough was negligent in failing to investigate and determine the ownership of the excavator prior to having it towed. The trial court also found Walker-Hall to be responsible for the negligent acts of S & M Towing, citing to cases discussing respondeat superior and agency law. However, the trial court also went on to find that Walker-Hall participated in a trespass, an intentional tort.[4]

On appeal, Walker-Hall contends that the trial court erred in finding that the City parked the excavator on property it either owned or had control over. Walker-Hall argues that the evidence in the record clearly preponderates against this finding and shows that the excavator was located on property owned by Walker-Hall. It makes this argument in an effort to establish that the City, not Walker-Hall, was the trespasser in this case. "One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other, or causes a thing or a third person to do so." Restatement (Second) of Torts § 158 (1965); *accord* Restatement (Second) of Torts § 161 (1965).

---

[4]The trial court does not elaborate on whether the trespass was to realty or chattel.

-6-

At trial, Mr. Thomas admitted that he never sought permission from Walker-Hall to park the excavator where it was located prior to being towed. Another City employee testified that, prior to undertaking the road improvement project, they looked at the plat to determine the size of their right-of-way. On appeal, the City contends that the trial court did not err in finding that the City parked the excavator on property it owned or that came within its control. First, the City takes the position that its employees parked the excavator within the City's right-of-way which extended thirty (30) feet on either side of Walker Road. In the alternative, the City argues that, even it its employees did not park the excavator within the right-of-way, they did park it within the City's utility easement which extends twenty-five (25) feet beyond the right-of-way. While the trial court determined that the City's employees parked the excavator within property "owned or within the control of" the City, the court did not determine whether the excavator was parked within the right-of-way or the utility easement.

At trial, the City introduced, through Mr. Thomas, several photographs as exhibits. Mr. Thomas testified that one photograph, entered as "Exhibit 5," depicted the location of the excavator along Walker Road prior to it being towed by S & M Towing. In the photograph, a City employee is standing next to track marks made in the dirt. Just beyond the City's employee in the photograph, and toward Walker-Hall's property, is a pile of debris. (Exhibit 5). Mr. Thomas testified that the pile of debris was twelve (12) to fifteen (15) feet from the edge of the pavement on Walker Road.[5] He also stated that the City's employees parked the excavator between the pile of debris depicted in the photo and Walker Road. Thus, according to Mr. Thomas' testimony, the City's employees parked the excavator no more than twelve (12) to fifteen (15) feet from the edge of Walker Road, placing it within the City's right-of-way.

On cross-examination, Mr. Thomas reiterated that the tracks and the City employee in the photograph mark the location of the excavator prior to its removal, and he acknowledged that the employee is standing underneath a power line. In fact, Mr. Thomas admitted that if the employee in the picture were to look straight up he would be looking directly at the power lines. Mr. Thomas also acknowledged that, in the photograph, there are two sizeable trucks parked parallel to Walker Road and sitting next to each other. Between the employee standing under the power lines and the parked trucks is another employee, and Mr. Thomas acknowledged that the employee in the middle is five to ten feet away from the employee under the power lines.

In support of its position that the evidence preponderates against the trial court's finding regarding the location of the excavator on the day S & M Towing removed it; Walker-Hall points to the testimony of Mr. Scarbrough. During his testimony, Mr. Scarbrough also identified the tracks and the City employee in the photograph as an accurate depiction of the location of the excavator on the day he visited the property. Mr. Scarbrough testified that, after the excavator had been removed,

_____

[5]In the picture depicting the location of the excavator is another City employee who appears to be taking measurements. Ms. Long testified that, after the excavator had been towed, the City sent two employees out to Walker Road to take measurements of the right-of-way. Interestingly, none of the witnesses presented by the City testified as to the results of such measurements.

he went back to Walker Road and took measurements. He stated that the distance from the center line of Walker Road to the utility pole is sixty-five (65) feet. He was also given a copy of the plat during his testimony. On the plat, Mr. Scarbrough marked the location of the excavator the day he visited the property, marking the location as just beyond the utility easement on Walker-Hall's property.

After reviewing the testimony of the witnesses and the photographs introduced as exhibits at trial, we cannot say that the evidence preponderates against the trial court's finding that the excavator was parked on property the City had the lawful ability to use. However, even a cursory inspection of the photographs reveals that Mr. Thomas' testimony to the effect that the excavator was parked no more than twelve (12) to fifteen (15) feet from the edge of Walker Road is inaccurate. The only alternative measurements presented to the trial court were those of Mr. Scarbrough, who stated that the utility poles depicted in the photographs are sixty-five (65) feet from the centerline of Walker Road. We are cognizant of the fact that the City admits that the right-of-way and utility easement collectively extend sixty-five (65) feet from the centerline of Walker Road. The photographs, which witnesses for both parties admit accurately depict the location of the excavator on the day it was removed, depict the excavator's tracks leading right up to the utility lines. Therefore, the evidence plainly shows that the excavator was either entirely or partially within the City's utility easement.[6] We are mindful that there was conflicting testimony at trial concerning whether the excavator or parts thereof extended over the utility line easement. We do not find clear and convincing evidence in the record to disrupt the trial court's implicit finding, which would necessarily hinge on credibility determinations, that the excavator did not extend beyond the utility easement. *See Wells v. Tenn. Bd. Of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

In 1975, the City, by express grant, obtained a utility easement extending twenty-five (25) feet beyond its right-of-way along Walker Road.[7] Said easement grants the City:

> [A] permanent easement and right-of-way, for the following purposes, namely: the perpetual right to enter at any time and from time to time and to construct, maintain, repair, rebuild, operate, and patrol its electric, gas, water, and sanitary sewer line(s) and all necessary appurtenances in, on, over, under and across said right-of-way together with the right to clear said right-of-way and keep the same clear of brush, trees, buildings, and fire hazards; and to remove

---

[6] For purposes of determining whether the City has engaged in a trespass, it is sufficient that even a portion of the excavator touched land owned by Walker-Hall. *See* Restatement (Second) of Torts § 158 cmt. I (1965); 87 C.J.S. *Trespass* § 13 (2000).

[7] We note that, upon reviewing the document purporting to grant the easement, the original grantor was Union University. While neither party presented proof at trial that Walker-Hall became the successor in interest to the subject property burdened by the easement, the evidence in the record before this Court indicates that Walker-Hall owns the servient estate burdened by the easement.

danger [sic] trees, if any, located beyond the limits of said right-of-way; all over, upon, across, and under the following described land[.]

At trial, Mr. Thomas testified that the Walker Road project had been finished for several weeks prior to the excavator being towed. At the time of its removal, the City was using the excavator to remove debris placed on the property during the road resurfacing project. Mr. Thomas also stated that, prior to the excavator being removed, it had been several days since the City last used the excavator to move any of the debris.

While we cannot say that the evidence presented at trial preponderates against the trial court's findings of fact regarding the location of the excavator (i.e. that it was parked on either of the City's right-of-way or the utility easement), we must undertake a *de novo* review of a trial court's conclusions of law. "An easement is an interest in property that confers on its holder an enforceable right to use another's property for a specific purpose." *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998) (citations omitted), *overruled on other grounds by Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000); *see also* 28A C.J.S. *Easements* § 2 (1996). An easement is not a form of tangible real estate, as it does not consist of a quantity of land, but it is merely a privilege to use the land of another. *Yates v. Metro. Gov't of Nashville & Davidson County*, 451 S.W.2d 437, 440-41 (Tenn. Ct. App. 1969).

When we are asked to determine if a party's use of land falls within the scope of an easement, we are mindful of the following principles of law:

> The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden.
>
> A fundamental principle is that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts, to which the right is not attached. In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication.
>
> A principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new and additional burden thereon. . . . It may be said in general that if an easement is put to any use

> inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use.

*Adams v. Winnett*, 156 S.W.2d 353, 357 (Tenn. Ct. App. 1941) (citations omitted); *see also McCammon v.Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991); *Ogle v. Trotter*, 495 S.W.2d 558, 565 (Tenn. Ct. App. 1973). Moreover, we are mindful that the City's utility easement takes the form of an express grant. "If the easement is claimed under a grant, the extent of the easement is determined by the language of the grant." *Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn. 1939). Therefore, the grantee's use of the easement must be strictly confined to the purpose stated in the grant. *Henry v. Tenn. Elec. Power Co.*, 5 Tenn. App. 205, 208 (Tenn. Ct. App. 1927). When the grant specifically sets forth the terms of the easement, the grantee cannot use the easement for a purpose beyond its intended use. *Id.; accord* 28A C.J.S. *Easements* §§ 57, 148, 160 (1996).

In the instant case, the City's utility easement expressly states that it is limited to activities related to public utilities (i.e. electric, gas, water, and sanitary sewer lines). The City asserts that the easement authorizes the City to "clear said right-of-way and keep the same clear of brush, trees . . . and to remove danger [sic] trees, if any, located beyond the limits of the right-of-way." While acknowledging that it used the property as a staging area for its road improvement project, the City contends that, pursuant to the language in the easement, it is permitted to enter the property to remove any debris remaining after the project was completed. We cannot agree.

Ordinarily, the holder of an easement may enter upon the property that is the subject of the easement to remove an obstruction which occurs naturally or is unlawfully placed there. *See Rollins v. Elec. Power Bd. Of the Metro. Gov't of Nashville & Davidson County*, No. M2003-00865-COA-R3-CV, 2004 Tenn. App. LEXIS 358, at *15-16 (Tenn. Ct. App. June 8, 2004) (citation omitted); 28A C.J.S. *Easements* §§ 181 (1996). The utility easement at issue clearly incorporates this right into its express language. The City's right to enter the easement to remove obstructions is "together with" the manner in which the City may use the property. Thus, the right to remove obstructions is clearly intended to further the enumerated uses of the easement. In this case, however, the obstructions (i.e. the debris remaining from the road improvement project) existed on the easement by virtue of the City's own conduct. It is disingenuous for the City to utilize the utility easement in a manner which is clearly not contemplated by the express language of the easement (i.e. as a staging area for a road construction project) and subsequently assert that it has the authority, pursuant to the same easement, to enter onto the land to remove that which it could not place there in the first instance.

Accordingly, the preponderance of the evidence supports the trial court's finding that the City parked the excavator on land "owned or within the control of" the City. Although the trial court did not go further and say whether the excavator was parked on the right-of-way or the utility easement, our review of the record reveals that the preponderance of the evidence indicates that the excavator was at least partially parked within the utility easement. *See Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) ("When the trial judge has failed to make specificfindings of fact, this Court will review the record to determine the preponderance of the evidence."). However, as a matter of law,

-10-

the City's use of the utility easement exceeded the scope of that easement, therefore, it became a trespasser. *See Adams v. Winnett*, 156 S.W.2d 353, 357 (Tenn. Ct. App. 1941); *see also Henry v. Tenn. Elec. Power Co.*, 5 Tenn. App. 205, 207-08 (Tenn. Ct. App. 1927). Thus, the trial court erred in finding that Walker-Hall participated in a trespass.

### B.
### *Damages*

On appeal, Walker-Hall raises two additional issues for our consideration. First, Walker-Hall argues that the trial court erred in finding that it was negligent in having the excavator removed from the property. Next, we are asked to examine whether the City sufficiently proved the amount of damages awarded by the trial court during the proceedings below.

Having determined that the City became a trespasser by exceeding the scope of the permissible use of the utility easement, Walker-Hall would be privileged to have the excavator removed. *See* Restatement (Second) of Torts § 77 (1965). As both parties acknowledge , "[t]he owner of realty owes to a trespasser the duty not to injure him willfully, maliciously, or intentionally." *Yarbrough v. Potter*, 207 S.W.2d 588, 589 (Tenn. 1948); *but see Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984) (rejecting the common law classifications of invitee and licensee and adopting a duty of reasonable care as to these individuals). A person acts willfully when his actions are "voluntary and intentional, but not necessarily malicious." Black's Law Dictionary 1593 (7th ed. 1999); *see also Barkley v. State*, 54 S.W.2d 944, 945 (Tenn. 1932). "A person acts maliciously when the person is motivated by ill will, hatred, or personal spite." *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); *see also Carson v. Baird*, 900 S.W.2d 685, 690-91 (Tenn. 1995). "A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Hodges*, 833 S.W.2d at 901; *see also Carson*, 900 S.W.2d at 690-91. Thus, to recover for the damage done to its excavator, the City needed to present evidence showing that Walker-Hall's conduct, or that of its employees or agents, rose to one of these levels.

It is clear from reading the City's complaints and reviewing the evidence presented at trial that the City sought recovery based on the alleged negligence of Walker-Hall in having the excavator removed. In fact, the trial court concluded that, by failing to determine the ownership of the excavator prior to having it towed, Mr. Scarbrough acted negligently. However, we find no proof in the record tending to show that Walker-Hall, its employees, or agents acted willfully, maliciously, or intentionally in damaging the City's excavator while removing it. Negligence is not the standard by which the courts of this state must evaluate the actions of a landowner against a trespasser. Thus, even if the actions of Walker-Hall rose to the level of negligence, the trial court erred in awarding damages to the City on this basis.

Accordingly, we do not need to reach the arguments raised by the parties concerning whether the City adequately proved its damages at trial because, based on the record before this Court, the

City is not entitled to recover for the damage to its equipment. Furthermore, since Walker-Hall did not file a counterclaim for damages against the City for trespass, we need not address what damages, if any, Walker-Hall would be entitled to.

## IV.
### CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court and remand this case to the trial court for any further proceedings which are necessary as a result of this opinion. Costs of this appeal are taxed to the Appellee, the City of Jackson, Tennessee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE