IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2006 Session

## COLUMBIA GULF TRANSMISSION COMPANY v. THE GOVERNORS CLUB PROPERTY OWNERS ASSOCIATION, ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 04660      Russ Heldman, Judge**

---

**No. M2005-01193-COA-R3-CV - Filed: August 21, 2006**

---

The owner of a perpetual natural gas pipeline right-of-way easement filed this Declaratory Judgement action to resolve a dispute with the fee simple owners regarding its right of ingress and egress to replace, upgrade and maintain existing underground pipelines.  The trial court declared the rights of the gas company were clearly and unambiguously stated in the grant of easement, that it had the right of ingress and egress stated in the Complaint and enjoined the defendants from obstructing or interfering with those rights.  The defendants appeal contending the time and manner of the exercise of the right of easement was ambiguous in the grant, and that the court erred by failing to consider the undue burden on the defendants caused by the time the work was scheduled.  Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Scott K. Haynes and Elizabeth L. Guenther, Nashville, Tennessee, for the appellants, The Governors Club Property Owners Association, G. C. Finance, LLC, and P. J. Management, LLC.

Lela M. Hollabaugh and Eileen Burkhalter Smith, Nashville, Tennessee, for the appellee, Columbia Gulf Transmission Company.

### OPINION

### I.

Columbia Gulf Transmission Company is a natural gas pipeline company that owns, operates and maintains a natural gas pipeline system in Tennessee, Louisiana, Mississippi and Kentucky.  The pipeline traverses Williamson County and runs through property in which the three defendants have a legal or equitable interest.  The real estate at the center of this controversy is a gated residential community and golf course known as "The Governors Club."  The three defendants are Governors

Club Property Owners Association, GC Finance, LLC, and PJ Management, LLC. The Governors Club Property Owners Association is the fee simple owner. GC Finance owns an interest as the principal mortgage holder. PJ Management manages the property and the golf course on behalf of and under contract with the Homeowners Association.

Defendants G.C. Finance, LLC, and The Governors Club Property Owners Association acquired the gated residential community and golf course from The Governors Club, LLC through a series of transactions from 1998 through 2003.

Defendants acquired the property subject to easements of record, which included Columbia's easements at issue. The gas pipeline right-of-way easements in question were acquired in the 1950s and 1960s by Gulf Interstate Gas Company, Columbia's predecessor-in-interest. The easements, which are perpetual, were acquired via a number of separate transactions with the then owners of the various tracts of property that now comprise the residential community known as "The Governors Club."

The easements acquired by Columbia's predecessor afford Columbia, its successors and assigns "a right-of-way and easement to construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace pipe lines and appurtenances . . . thereto for the transportation of oil, gas petroleum products or any other liquids, gases or substances which can be transported through pipe lines."

Prior to Defendants' acquisition of the property, their predecessor-in-interest, The Governors Club, LLC, entered into an agreement entitled "Partial Release of Right-of-Way Agreement" with Columbia in 1997. The agreement was properly recorded and was of record when Defendants began acquiring the property. Pursuant to the 1997 agreement, Columbia and The Governors Club, LLC exchanged certain rights of easement and clarified other rights. In pertinent part, the 1997 Agreement provided:

> [Columbia] is retaining such easements pursuant to the terms and provisions by which they were acquired.
>
> ****
>
> . . . all necessary provisions and arrangements will be made and warranted by THE GOVERNOR'S CLUB, LLC for ingress to and egress from the premises of the "gated" subdivision of THE GOVERNOR's CLUB AT PLEASANT HILL at any time for personnel, vehicles, equipment, and materials of Columbia Gulf Transmission Company, its contractors, and vendors when Columbia Gulf Transmission Company determines that it is necessary for the operations, maintenance, inspection, construction, and upgrading of its pipelines and facilities in compliance with all applicable laws and regulations of Federal, State, local authorities, and Columbia Gulf Transmission's Policies and Procedures.

\*\*\*\*

It is understood and agreed that the execution and delivery of this instrument does not constitute and shall never be construed or deemed to be a release or surrender of [Columbia] of any of its rights, title, and interest in and to that portion of the land not expressly released herein. The said Right-of-Way Agreements hereinabove described shall continue in full force and effect as a valid and subsisting Right-of-Way Agreement as to all its terms and provisions with regard to that portion of the land not specifically released by this instrument.

\*\*\*\*

The terms, provisions, and conditions of this instrument shall be binding upon the parties hereto, their respective successors, assigns, heirs, and legal representatives forever.

In 2004, Columbia informed Defendants it intended to perform a "class upgrade project." As the record explains, the upgrade was necessary to maintain compliance with applicable federal laws that required an upgrade of approximately three miles of the pipeline with thicker walled pipe to better protect and ensure public safety. That upgrade required replacing the three pipelines under the defendants' property.

The deadline for the completion of the federally mandated upgrade was June 22, 2006. Columbia scheduled construction to begin on June 1, 2005. Commencing the work on that date, Columbia explained, was necessary in order to meet the 2006 deadline and to avoid construction during the peak demand period, the winter heating season. Unfortunately, the construction schedule chosen by Columbia was particularly burdensome on the defendants' golf course business.

In their efforts to delay the construction until the winter, the defendants refused to give Columbia access to the property. Defendants insisted Columbia was obligated to exercise its easement rights "in a reasonable manner," and Columbia had other reasonable alternatives such as reducing the pressure in gas lines running through the property and upgrading at a time less disruptive to Defendants.

In order to avoid conflicts at the start of and during construction, Columbia filed a Complaint for Declaratory Judgment requesting the trial court declare the rights of the parties. Columbia additionally requested injunctive relief, to prevent interference with construction, and damages for breach of contract. Defendants answered, arguing Tennessee law requires a balancing of the rights between landowners and easement holders, and pursuant to that standard the trial court should require Columbia to exercise the easement rights in a way least burdensome to the defendants.

The trial court found the delay of the planned construction violated Columbia's property and contractual rights and the construction was not an unreasonable interference with Defendants' use

of the property, that Defendants' denial of ingress and egress, and refusal to allow Columbia to replace the pipelines within the easement was an unreasonable interference with Columbia's easement.

Defendants assert two issues on appeal. One, they contend the trial court erred by finding Columbia's easement rights were paramount, insisting instead the court should have considered the undue burden on the defendants caused by the time the work was scheduled. Two, they contend the trial court erred by finding the grant of easement "clear, unambiguous, and defined."

## II.
### STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## III.
### ANALYSIS

An easement is a right to some lawful use of the real property of another. *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). It is a privilege to use the land of another. *Yates v. Metro. Gov't of Nashville & Davidson County*, 451 S.W.2d 437, 440-41 (Tenn. Ct. App. 1969). An easement is an interest in another's real property that confers on the easement holder an enforceable right to use that real property for a specified use. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998) (citing *Brew v. Van Deman*, 53 Tenn. 433, 436 (1871)).

Easements can be created in several ways: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. *Pevear*, 924 S.W.2d at 115-16. In this case, the natural gas pipeline easement was created by express grant via a series of recorded agreements. When an easement is created by express grant, as in an agreement, the extent and any conditions on the easement must be determined by the grant, which is found in the language of the agreement. *Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *5 (Tenn. Ct. App. Feb. 26, 2003) (citing *Foshee v. Brigman*, 174 Tenn. 564, 567, 129 S.W.2d 207, 208 (1939)); *see*

*also Cellco Partnership v. Shelby County,*172 S.W.3d 574, 592 (Tenn. Ct. App. 2005); *Lynn v. Turpin*, 215 S.W.2d 794, 796 (Tenn. 1948); *Foshee,* 129 S.W.2d at 208 (holding if an easement is claimed under a grant, the extent of the easement is determined by the language of the grant). Therefore, the easement holder's use of the easement must be confined to the purpose stated in the grant of the easement. *Henry v. Tenn. Elec. Power Co.*, 5 Tenn.App. 205, 208 (Tenn. Ct. App. 1927); *see also Adams v. Winnett,* 156 S.W.2d 353, 357 (Tenn. Ct. App. 1941)(quoting 17 AM. JUR. *Easements* § 98).

When the grant specifically states the terms of the easement, the grantee cannot use the easement for a purpose beyond its intended use. *Henry,* 5 Tenn. App. at 208; *accord* 28A C.J.S. *Easements* §§ 57, 148, 160 (1996). The use of an easement must be confined to the purposes for which it was granted. *Adams v. Winnett*, 156 S.W.2d 353, 357 (Tenn. Ct. App.1941) (citations omitted). "A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Id.*; *see also McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991); *Ogle v. Trotter*, 495 S.W.2d 558, 565 (Tenn. Ct. App. 1973).

## A.

Although the defendants have attacked Columbia's easement on many fronts, the dispositive issue is whether Columbia has the unilateral right to determine when it is necessary to go upon Defendants' property. Defendants insist the grant of easement was not clear and unambiguous as the trial court found, but instead was silent as to the time when and manner by which Columbia could exercise its right of ingress and egress, and that the court should have considered the undue burden caused by the work schedule set by Columbia.

It is not disputed that Columbia has the right to go upon Defendants' property "for the operations, maintenance, inspection, construction, and upgrading of its pipelines and facilities in compliance with all applicable laws and regulations of Federal, State, local authorities, and Columbia Gulf Transmission's Policies and Procedures." What is disputed is when Columbia and its contractors may go upon the property, what factors must be considered in making the decision, and who makes the decision. Columbia insists it has the unilateral right to decide when it is necessary. The defendants insist Columbia must consult with them to determine when it is necessary.

The grant of easement to Columbia that is pivotal to this issue is in the 1997 "Partial Release of Right-of-Way Agreement." It states in pertinent part:

> . . . all necessary provisions and arrangements will be made and warranted by the Governor's Club, LLC for ingress to and egress from the premises of the "gated" subdivision of The Governor's Club . . . *at any time* for personnel, vehicles, equipment, and materials of [Columbia] . . . , its contractors, and vendors *when* [*Columbia*] *determines that it is necessary*. . . ." (emphasis added).

Defendants assert this language is ambiguous because the grant of the easement does not state time, place and manner. Consequently, Defendants insist the trial court should have, but did not, balance the interests of the parties in determining when or whether the work should be performed. Specifically, they insist the court should have considered the undue burden placed on them by the construction on the golf course in the peak golf season.[1] A plain reading of the grant, however, reveals the contrary. As the trial court correctly stated, the grant of easement is clear and unambiguous.

The grant specifically provides that ingress and egress will be provided "at any time . . . Columbia . . . determines it is necessary." Thus, Columbia need not confer with the defendants to determine when it is necessary to go upon the property that is subject to the easement "for the operations, maintenance, inspection, construction, and upgrading of its pipelines and facilities in compliance with all applicable laws and regulations of Federal, State, local authorities, and Columbia Gulf Transmission's Policies and Procedures."

**B.**

Defendants also assert that a balancing test should be used to determine whose rights were controlling. We find this argument without merit for two reasons.

First, when the terms of an easement by a grant are specific, they are decisive. *Foshee*, 129 S.W.2d at 208. Furthermore, the nature and extent of the easement is derived from the language of the grant. *Id.* Having concluded as the trial court did that the grant is clear and unambiguous, we do not have the latitude to balance the burdens that may be imposed upon the parties.

Second, the cases Defendants rely on in asserting this argument are all cases where the easement was altered or changed by one of the parties. In *Carroll v. Belcher,* No. 01A01-9802-CH-00106, 1999 WL 58957 (Tenn. Ct. App. Feb. 9, 1999), the easement holder began widening the easement, and the owner of the servient estate erected fences along the easements boundary. In *Lowe v. Gulf Coast Development, Inc.,* No. 01-A-019010-CH-00374, 1991 WL 220576 (Tenn. Ct. App. Nov. 1, 1991), the property owner erected improvements on the easements. In *Horton v. Shacklett*, 95 S.W.2d 936 (Tenn. Ct. App. 1936), the easement holder expanded use of an easement beyond the grant. In this case, neither party sought to enlarge or alter the easement area, nor did Columbia attempt to impose a new or additional burden on the defendants' property. Accordingly, we find no error with the trial court's decision to not determine the rights of the parties based upon the so-called balancing test.

---

[1]Defendants contend the construction during the peak golf season caused a significant loss of revenue due to the fact as many as nine holes on the golf course were closed or significantly affected by the construction.

**IV.**

We therefore affirm the trial court's declaration of the rights of the parties in all respects. This matter is remanded with costs of appeal assessed against appellants, The Governors Club Property Owners Association, GC Finance, LLC, and PJ Management, LLC.

_____
FRANK G. CLEMENT, JR., JUDGE